STATE of Minnesota, Respondent,

v.

Gary Curtis FULLER, Petitioner,

No. C3–83–2002.

Court of Appeals of Minnesota.

June 5, 1984.

Review Granted Sept. 5, 1984.

David Malban, Duluth, for respondent.

Robert E. Lucas, Duluth, for petitioner.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge

Petitioner, Gary Fuller, petitioned this court for a writ of prohibition to test whether he can be tried on a third occasion for the same offense after the first two trials ended in mistrials. This court granted the petition for the temporary writ.

The writ is made absolute.

## FACTS

On March 14, 1983, petitioner Gary Fuller, currently a resident of the Twin Cities, was charged in Duluth, Minnesota, with the three misdemeanors: Assault IV, Criminal Damage to Property, and Driving After Suspension. The matter first came on for trial before the Honorable Thomas Bujold on October 12, 1983. Petitioner filed a Notice of Removal of the Judge and the matter was reset for hearing.

On November 7, 1983, the matter came on for trial before the Honorable Galen Wilson. Prior to trial, both parties made motions *in limine* to exclude certain evidence. The court accepted the stipulation of defendant-petitioner that, at the time of the incident, his license to drive had been suspended and that he was aware of the suspension. The stipulation was read to the jury impaneled to hear the trial. As a part of the stipulation, the court ruled that evidence regarding this information was inadmissible.

The State's first witness, Deborah Spears, was called and testified on the allegations. After several minutes of testimony, the witness and the prosecutor engaged in the following exchange:

Q. When did you have any other discussions about whether or not he had a license to drive?

A. I just asked how he could drive around the day he got out of jail or being locked up and—

(An objection was made by Mr. Lucas. The following was held in chambers.)

Defendant-petitioner made a motion for a mistrial and it was granted.

The matter came on for trial again on November 21, 1983. A new jury was called and the motions made *in limine* were repeated. The court instructed the prosecutor as follows:

THE COURT: The record should reflect that during the testimony of the first witness, Ms. Spears, in the mistrial matter, Ms. Spears volunteered something to the effect that the defendant knew his license was in a state of revocation because he had just gotten out of jail and at that point there was a motion by defense counsel for a mistrial and that motion was granted. I assume Ms. Spears knows at this point that she is not to make such a statement again.

MR. MALBAN: Well, I assume she does know. I think she knows. I haven't talked to her today except by telephone.

THE COURT: At the time of the other trial, I assume you explained to her.

MR. MALBAN: I explained to her just what happened and she understands at that point why there was a mistrial and what words that it was that she said that had caused it.

MR. LUCAS: I think there was an order from the prior case that the prosecutor was not to go into my client's prior record and that he was not to go into the fact that my client has been in jail, isn't that correct?

THE COURT: I believe that was the tenor of it. We came to the question of the prosecutor proving that the defendant knew that his license was suspended.

MR. MALBAN: That is correct.

THE COURT: And I believe that as a result of the discussion at that time there was a stipulation, the defendant stipulated that the defendant's license was suspended by the State of Minnesota and that he was aware that the license was suspended at the time of the alleged offense of driving after suspension.

MR. LUCAS: That is correct. I think that that stipulation binds us now and I am willing to proceed on that stipulation.

THE COURT: Under the circumstances, the State may not go into anything about prior driving or prior knowledge of the defendant about his driving privilege.

MR. MALBAN: I don't intend to in my case in chief.

The impaneled and sworn jury was then instructed and the stipulation was read to them. Deborah Spears was again called as the State's first witness and, during her testimony, the following exchange occurred:

Q. Did you have an occasion to express any concern about Mr. Fuller transporting you that evening?

A. No.

Q. Did you suspect there might be some difficulty with him doing it legally?

A. Well, I knew he didn't have a driver's license. I thought he didn't have one and I know Gary always drives without one, you know.

Defendant-petitioner again requested a mistrial and the motion was granted.

On December 7, 1983, defendant moved the trial court to dismiss the case on the grounds of state and federal constitutional prohibitions against double jeopardy. The trial court denied the motion. This court then granted a temporary writ of prohibition.

## ANALYSIS

 Both the State and Federal Constitutions prohibit putting a person twice in jeopardy for the same offense. United States Constitution, Amendment V; Minnesota Constitution, Article I, Section 7. A person is in jeopardy, and the constitutional provisions attach, as soon as a jury is sworn. *State v. McDonald,* 298 Minn. 449, 452, 215 N.W.2d 607, 608–09 (1974) (citing *State v. Sommers,* 60 Minn. 90, 61 N.W. 907 (1895)). The Federal right applies to the State through the 14th Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

In 1976, the Minnesota Supreme Court addressed whether the double jeopardy protection applies after a mistrial. In *State v.*

*Gwara,* 311 Minn. 106, 247 N.W.2d 417 (1976), the court outlined two standards:

If jeopardy attached and the declaration of mistrial was at defendant's request or with his consent, then the rule is that the state may retry defendant unless the mistrial was necessitated by bad-faith, intentional misconduct of the trial court or the prosecutor purposely designed to prejudice defendant's chances for an acquittal or to goad him into requesting a mistrial. On the other hand, if jeopardy attached but the mistrial was without defendant's consent, then the test is a different one—specifically, whether in the context of the trial the declaration was dictated by manifest necessity or the ends of public justice.

*Id.* at 108–09, 247 N.W.2d at 419.

These standards were based on federal constitutional law and upon the United States Supreme Court's decision in *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In *Dinitz,* the court held that the double jeopardy clause protects a defendant against governmental actions intended to provoke mistrial requests and to subject defendants to the substantial burdens imposed by multiple prosecutions. The court concluded the clause bars retrials where bad-faith conduct by a judge or prosecutor threatens harassment of an accused by successive prosecutions or declaration of a mistrial to afford the prosecution a more favorable opportunity to convict the defendant. *Id.* at 611, 96 S.Ct. at 1081 (citations omitted).

In 1982, the United States Supreme Court narrowed the right to invoke the bar of double jeopardy to "cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).

The majority made it clear that the standard did not include those instances in which a mistrial resulted because of "overreaching" or "harassment" by the prosecutor. Mere bad-faith, as recognized in *United States v. Jorn,* 400 U.S. 470, 91 S.Ct.

547, 27 L.Ed.2d 543 (1971) and *Dinitz*, is no longer sufficient to invoke the double jeopardy clause.

■ In this matter, the trial court indicated there was no showing of willful or intentional conduct on the prosecutor's part. This finding is not clearly erroneous and cannot be disturbed on appeal. Under the terms of the Federal Constitution, then, defendant-petitioner cannot invoke protection under the double jeopardy provision.

■ The question then arises whether that protection may be invoked under the Minnesota State Constitution. The *Gwara* case was determined under the Federal Constitution and did not address protections under our state constitution. A state may, however, interpret its own constitution different from the United States Supreme Court's interpretation of identical language in the United States Constitution. In *Kennedy*, Justice Brennan, in his concurrence, noted that although the opinion determined the question under federal law, nothing would prevent the Oregon court, on remand, from considering the matter under the Oregon Constitution. *Kennedy*, 456 U.S. at 680–81, 102 S.Ct. at 2092. *See also* Fleming & Nordby, *The Minnesota Bill of Rights: "Wrapt in the Old Miasmal Mist"*, 7 Hamline L.Rev. 51, 57 (1984).

Article I, Section 7, of the Minnesota Constitution, provides, in pertinent part:

No person shall be held to answer for a criminal offense without due process of law, and no person shall be put twice in jeopardy of punishment for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

*Id.*

Defendant-petitioner requests this court adopt the standard enunciated by the Oregon state court in *Oregon v. Kennedy*. There the court ultimately declared "that a retrial is barred by article I, section 12, of the Oregon Constitution when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal." *Oregon v. Kennedy*, 295 Or. 260, 276, 666 P.2d 1316, 1326 (1983).

■ In the case currently before us, not one but two mistrials were called, each of them for essentially the same reason, improper testimony by the state's first witness. To avoid the problem of a witness blurting out improper testimony, the state has a duty to prepare its witness. *State v. Underwood*, 281 N.W.2d 337, 342 (1979). Whether or not the testimony was elicited deliberately by the prosecutor, his failure to adequately prepare his witness so she did not repeat her mistake can be viewed as gross negligence constituting bad faith.

The concern with continued mistrials caused by the prosecution is that defendant is subjected to continued trials far from his home without the opportunity to complete a fair trial resulting in either conviction or acquittal. In this case, defendant has appeared in Duluth three times for a trial on a misdemeanor charge. There comes a point where it is no longer economically feasible for defendant to continue appearing for trial so he pleads guilty to the charge rather than appear at trial again.

## DECISION

■ Where defendant appeared for trial on a misdemeanor charge three times and mistrials were called with the consent of defendant because of improper testimony by the state's witness on two of those occasions, the double jeopardy clause of the Minnesota Constitution precludes retrial by the state. The writ is made absolute.