STATE of Minnesota, Petitioner, Appellant,

v.

Gary Curtis FULLER, Respondent.

No. C3–83–2002.

Supreme Court of Minnesota.

Oct. 11, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, David J. Melban, Asst. City Atty., Duluth, for appellant.

Robert E. Lucas, Duluth, for respondent.

Peter W. Gorman, Monte W. Miller, MN Trial Lawyers Assn., C. Paul Jones, Mr. Jack Nordby, Minneapolis, John Henry Hingson, III, National Assn. of Criminal

Defense Lawyers, Oregon City, OR, Amicus Curiae.

PETERSON, Justice.

Defendant, Gary Curtis Fuller, was charged in county court with three misdemeanors. Two attempts to try him ended in mistrials because of prejudicial testimony by the alleged victim during direct examination by the prosecutor. Defendant unsuccessfully moved for a dismissal of all charges, claiming that further prosecution was barred by the double jeopardy provisions of the United States and Minnesota Constitutions. Defendant then obtained a writ of prohibition from the court of appeals, based on that court's interpretation of the double jeopardy clause of the Minnesota Constitution. We reverse and remand to the trial court.

On March 14, 1983, defendant was charged in county court with three misdemeanors: assault in the fifth degree, Minn. Stat. § 609.224, subd. 2 (1984), criminal damage to property, Minn.Stat. § 609.595, subd. 2 (1984), and driving after suspension of his license, Minn.Stat. § 171.24 (1984). The charges stemmed from a February 1983 incident reported by a woman with whom defendant had lived in 1978 and with whom he had a son.

On November 7, 1983, the matter came on for trial. Before trial commenced, both parties stipulated (1) that at the time of the incident defendant's driver's license had been suspended and (2) that defendant was aware of the suspension. As a part of the stipulation, the court ruled that other evidence regarding these facts was inadmissible. The stipulation was read to the impaneled jury just before the prosecutor gave his opening statement.

The state's first witness was the alleged victim. She was a reluctant witness, having sought unsuccessfully to persuade the prosecutor to dismiss the charges, which were based on her complaint. After several minutes of direct examination, she and the prosecutor engaged in the following exchange concerning her acceptance of a ride from defendant:

Q What was discussed at that point in time regarding the license and whether or not [defendant's license] was suspended or revoked?

A I didn't have to ask if it was suspended or revoked. I just knew he didn't have a license.

Q Did you say that to him?

A Yes.

Q What was his response?

A This was his friend's car, no one was going to recognize him in his friend's car so he felt safe.

\* \* \* \* \* \*

Q When did you have any other discussions about whether or not he had a license to drive?

A I just asked how he could drive around the day he got out of jail or being locked up and—

Defense counsel moved for a mistrial, and the trial court granted the motion.

Two weeks later, on November 21, 1983, a new jury was impaneled. The following exchange occurred out of the hearing of the jury:

THE COURT: The record should reflect that during the testimony of the first witness [the victim] in the mistrial matter, [she] volunteered something to the effect that the defendant knew his license was in a state of revocation because he had just gotten out of jail and at that point there was a motion by defense counsel for a mistrial and that motion was granted. I assume [she] knows at this point that she is not to make such a statement again.

[PROSECUTOR]: Well, I assume she does know. I think she knows. I haven't talked to her today except by telephone.

THE COURT: At the time of the other trial, I assume you explained to her.

[PROSECUTOR]: I explained to her just what happened and she understands at that point why there was a mistrial

and what words that it was that she said that had caused it.

[DEFENSE COUNSEL]: I think there was an order from the prior case that the prosecutor was not to go into my client's prior record and that he was not to go into the fact that my client has been in jail, isn't that correct?

THE COURT: I believe that was the tenor of it. We came to the question of the prosecutor proving that the defendant knew that his license was suspended.

[PROSECUTOR]: That is correct.

THE COURT: And I believe that as a result of the discussion at that time there was a stipulation, the defendant stipulated that the defendant's license was suspended by the State of Minnesota and that he was aware that the license was suspended at the time of the alleged offense of driving after suspension.

[DEFENSE COUNSEL]: That is correct. I think that that stipulation binds us now and I am willing to proceed on that stipulation.

THE COURT: Under the circumstances, the state may not go into anything about prior driving or prior knowledge of the defendant about his driving privilege.

[PROSECUTOR]: I don't intend to in my case in chief.

Before the jurors were sworn, defense counsel informed the court that his wife, who had been summoned for jury duty but dismissed from this case, had spoken during a break with one of the jurors who had been selected to hear defendant's case. Because this discussion had been unrelated to the case, however, neither the prosecutor nor the judge at that time viewed the incident as warranting more than a general cautionary instruction to the jury.

As in the first trial, the jurors were read the stipulation as to defendant's suspended driver's license. The prosecutor once again called the alleged victim as his first witness. During her testimony, the following exchange occurred:

Q Did you have an occasion to express any concern about [defendant's] transporting you that evening?

A No.

Q Did you suspect there might be some difficulty with him doing it legally?

A Well, I knew he didn't have a driver's license. I thought he didn't have one and I know [he] always drives without one, you know.

Defendant again moved for a mistrial. The prosecutor opposed this, saying:

[PROSECUTOR]: Well, I regret that it happened and it isn't certainly something that I asked her to say. It was basically the same question that I asked her before when she responded that he would drive her home and that he had a friend's car and he wouldn't be recognized and I discussed this with her two weeks ago and that we won't talk about him being in jail and I reiterated that to her again today. The last time I told her she couldn't talk about anything other than the facts of this case and we won't go back to any assault or any other driving or anything and we were only concerned with what happened that day unless I asked a direct question. This isn't the same situation that we had two weeks ago.

The court again declared a mistrial, citing both the testimony of the witness and the contact between defense counsel's wife and the juror.

Defense counsel then moved to dismiss the case, claiming that further prosecution was barred by the double jeopardy clauses of the United States and Minnesota Constitutions. The trial court denied this motion, stating:

THE COURT: There is no showing that there was any willful or intentional conduct on the part of the prosecution in this case and I am going to deny your motion. I do want to say something on the record about this matter because I know it's coming up again. I think it should occur to everyone here that there is a possibility due to the relationship between the chief witness for the state and the defendant that that witness might be playing games. I guess I will

make it clear. It's clear that they had a child together and it's clear that they lived together for a period of time. They obviously have some feelings toward each other and I am not sure, I am not sure in my own mind that that witness is not deliberately prolonging this affair by doing these things, by blurting out these things.

The court of appeals granted a writ of prohibition barring further prosecution. It recognized that under the federal constitution, as interpreted by the United States Supreme Court, the trial court correctly denied the motion to dismiss because the prosecutor's elicitation of the inadmissible evidence was not intentional or willful. The court of appeals concluded, however, that the prosecutor's conduct in eliciting the evidence was "gross negligence constituting bad faith" and that under the double jeopardy clause of the Minnesota Constitution further prosecution should be barred. *State v. Fuller*, 350 N.W.2d 382, 386 (Minn. App.1984).

 Both the United States Constitution and the Minnesota Constitution prohibit putting a person twice in jeopardy for the same offense. The Fifth Amendment of the United States Constitution provides, in relevant part, "No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb." The Minnesota Constitution provides, in Article 1, Section 7, that "[n]o person * * * for the same offense shall be put twice in jeopardy of punishment." A person is in jeopardy and the constitutional provisions attach as soon as a jury is sworn. *State v. McDonald*, 298 Minn. 449, 452, 215 N.W.2d 607, 608–09 (1974).

 When a criminal trial is terminated over a defendant's objection, the double jeopardy clause of the federal constitution bars a second trial unless there was a "manifest necessity" that the first trial be terminated. *Oregon v. Kennedy*, 456 U.S.

667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). However, if a trial is terminated at the defendant's request, the double jeopardy clause does not bar a second trial unless the mistrial resulted from governmental misconduct intended to provoke the mistrial request. *Id.* at 673–79, 102 S.Ct. at 2088–91.

 The trial court found that the prosecutor did not willfully or intentionally elicit any inadmissible evidence. Since that finding is not clearly erroneous, we conclude, as did the court of appeals, that the double jeopardy clause of the federal constitution does not bar a third trial. The court of appeals, however, gave a broader reading to the scope of the protection provided by the double jeopardy clause of the Minnesota Constitution which, as we said, reads for all practical purposes identical to the federal clause.

 It is axiomatic that a state supreme court may interpret its own state constitution to offer greater protection of individual rights than does the federal constitution. *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *see also Wegan v. Village of Lexington*, 309 N.W.2d 273, 281 n. 14 (Minn.1981); *O'Connor v. Johnson*, 287 N.W.2d 400, 405 (Minn.1979); *State v. Olsen*, 258 N.W.2d 898, 907 n. 14 (Minn. 1977); *State v. Oman*, 261 Minn. 10, 21, 110 N.W.2d 514, 522–23 (1961). Indeed, as the highest court of this state, we are " 'independently responsible for safeguarding the rights of [our] citizens.' " *O'Connor*, 287 N.W.2d at 405 (quoting *People v. Brisendine*, 13 Cal.3d 528, 551, 119 Cal.Rptr. 315, 330, 531 P.2d 1099, 1114 (1975)). State courts are, and should be, the first line of defense for individual liberties within the federalist system.[1] This, of course, does not mean that we will or should cavalierly construe our constitution more expansively

---

1. Law review commentaries addressing the issue include: Fleming & Nordby, *The Minnesota Bill of Rights: "Wrapt in the Old Miasmal Mist,"* 7 Hamline L.Rev. 51 (1984); Linde, *E Pluribus— Constitutional Theory and State Courts,* 18 Ga.L. Rev. 165 (1984); Pollock, *State Constitutions as Separate Sources of Fundamental Rights,* 35 Rutgers L.Rev. 707 (1983).

than the United States Supreme Court has construed the federal constitution. Indeed, a decision of the United States Supreme Court interpreting a comparable provision of the federal constitution that, as here, is textually identical to a provision of our constitution, is of inherently persuasive, although not necessarily compelling, force.

■ We do not believe that this is an appropriate case in which to decide whether the double jeopardy clause of the Minnesota Constitution gives a criminal defendant greater protection than the federal constitution against retrial following a mistrial provoked by prosecutorial misconduct. This is because the defendant in this case is clearly not entitled to relief under any reasonable alternative to the rule recognized by the United States Supreme Court in *Kennedy*. Looked at in the worst possible light, the prosecutor was merely negligent in asking the question that elicited the evidence that defendant always drove without a license. Given the fact that the record indicates that the prosecutor had warned the witness against referring to defendant's prior acts of driving without a license, the prosecutor had no reason to expect that his question would elicit the inadmissible evidence. Significantly, defense counsel did not object to the question, only to the answer. Also significantly, the trial court suspected that the witness was "deliberately prolonging the affair by doing these things, by blurting out these things." Further, the trial court based its mistrial ruling not just on the witness' answer but also on the contact that defense counsel's wife had with one of the jurors. In short, whether we were to adhere to the test recognized in *Kennedy* or were to adopt some reasonable alternative to it, we would conclude, as we do now, that a retrial of defendant will not violate the provision of the Minnesota Constitution protecting defendant against being twice put in jeopardy for the same offense.

Reversed and remanded.

KELLY, Justice (concurring specially).

I concur in the result.

WAHL, Justice (dissenting).

I respectfully dissent. Whether or not the action of the prosecutor rises to the level of willful or intentional conduct which triggers the double jeopardy clause of the federal constitution as a bar to Fuller's third trial on the charged misdemeanor offense, *Oregon v. Kennedy*, 456 U.S. 667, 673–79, 102 S.Ct. 2083, 2088–91, 72 L.Ed.2d 416 (1982), this court is not precluded and should not be inhibited from exercising what Justice Brennan termed "the independent protective force of state law." Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Har.L.Rev. 489, 491 (1977). Justice Hans Linde of the Supreme Court of Oregon understood the nature of that force, writing that state constitutional guarantees were "meant to be and remain genuine guarantees against misuse of the state's governmental powers, truly independent of the rising and falling tides of federal case law both in method and in specifics." *State v. Kennedy*, 295 Or. 260, 666 P.2d 1316, 1323 (1983). The purpose of the double jeopardy provision of the Minnesota Constitution is to protect a defendant in a criminal case from a second trial for the same offense, not to punish an official for intentional misconduct. As this court emphasized in *State v. Thompson:*

> The protective doctrine of double jeopardy is nothing more than the declaration of an ancient and well established *public policy* that no man should be unduly harassed by the state's being permitted to try him for the same offense again and again until the desired result is achieved.

241 Minn. 59, 62, 62 N.W.2d 512, 516 (1954) (emphasis in original).

The majority finds this an inappropriate case in which to decide whether the double jeopardy clause of the Minnesota Constitution gives a criminal defendant greater protection than the federal constitution against retrial after a mistrial has been provoked by prosecutorial misconduct because, in the majority's view, there is no reasonable alternative to federal rule in

*Kennedy* under which the defendant in this case would be entitled to relief. This view misperceives the nature and extent of the harm done to this defendant and this court's power under the Minnesota Constitution to craft a reasonable standard to remedy such harm.

Three times this defendant took time off work, left his home in the Twin Cities, and traveled one hundred and fifty miles to Duluth to be tried on three misdemeanor offenses, fifth-degree assault, criminal damage to property, and driving after suspension. At the first trial, the prosecution and defense stipulated that at the time of the incident, the defendant's license to drive had been suspended and he was aware of the suspension. After ordering the prosecution not to go into the defendant's prior record or the fact that he had been in jail, the court read the stipulation to the jury. The prosecutor asked the state's first witness, after several minutes of testimony, when she and the defendant had discussed whether or not he had a license to drive. This question concerned the very facts to which the parties had stipulated. The witness replied "I just asked how he could drive around the day he got out of jail or being locked up * * * " The defendant's motion for a mistrial was granted.

At the second trial, two weeks later, the parties' stipulation regarding the defendant's license revocation and his awareness of that revocation was again accepted by the court. The court asked the prosecutor if he had prepared the witness who had made the prejudicial statement and ordered him, under the circumstances, not to go into "anything about prior driving or prior knowledge of the defendant about his driving privilege." In spite of this warning, during examination of the same first witness, the prosecution asked:

Q. Did you have an occasion to express any concern about Mr. Fuller transporting you that evening?

A. No.

Q. *Did you suspect there might be some difficulty with him doing it legally?* (emphasis added.)

In response to this direct question, the witness said she knew Fuller did not have a driver's license and she knew he always drove without one. This answer led to a second mistrial on defendant's motion. In light of the stipulation, the only fact regarding the defendant's driving the prosecutor needed to establish by this witness was that he had, indeed, driven the car that evening. Yet, the prosecutor deliberately asked the witness whether she suspected there was some difficulty with the defendant's driving legally. A reasonable prosecutor would expect a witness to answer such a question with exactly the answer she gave. This question and the answer it elicited provoked the second mistrial.[1]

It is not contended that " 'every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' " *State v. McDonald,* 298 Minn. 449, 452, 215 N.W.2d 607, 609 (1974) (quoting *Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). The public interest in convicting the guilty would be frustrated if retrial were barred when a mistrial was dictated by "manifest necessity," such as a hung jury. There is agreement, however, that in some instances, the prosecutor's actions have so unfairly prejudiced the defendant's chances of acquittal that the defendant has no choice other than a mistrial motion. The disagreement comes over the standard required to bar retrial under double jeopardy protection in such instances.

The *Kennedy* "intent" standard now required by the United States Supreme Court under the double jeopardy clause of the federal constitution inadequately protects the objectives sought to be furthered by the double jeopardy provision of the Minnesota Constitution. Under the "intent" standard, where a defendant requests a

---

1. The parties had agreed earlier that the brief, innocent conversation of a selected juror with the wife of the defense counsel in the hall was not grounds for preventing the defendant from getting a verdict of guilty or not guilty from this second tribunal.

mistrial, retrial is barred only where the governmental conduct in question is intended " 'to goad the [defendant] into requesting a mistrial.' " *Oregon v. Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088 (citing *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976)). This standard uses the federal double jeopardy provision to deter prosecutorial misconduct rather than protect the defendant, which is the purpose of Minnesota's double jeopardy bar. As well as focusing on prosecutorial misconduct, in Justice Stevens words, "[i]t is almost inconceivable that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant." *Id.* 456 U.S. at 688, 102 S.Ct. at 2096. (Stevens, J., concurring).

The Supreme Court of Oregon, rejected the "intent" standard in considering *Kennedy* on remand from the United States Supreme Court. The court held "a retrial is barred by article I, section 12, of the Oregon Constitution when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal." *State v. Kennedy,* 666 P.2d at 1326. This is a reasonable alternative to the federal "intent" standard and protects the defendant without the burden of an impossible problem of proof. At the same time, this standard protects the state's interest in the administration of justice by requiring that the prosecutor intentionally or knowingly pursue an improper course of action without heed to the consequences.

Applying this standard to the facts in *Kennedy,* the Oregon court concluded that the criteria barring retrial were not met where the prosecutor's misconduct resulting in a mistrial consisted of seeking to impeach an expert witness by asking if the reason he had never done business with the defendant was "because he was a crook." The court noted that there was not "any suggestion that the prosecutor on previous occasions had been warned against similar transgressions." *Id.* at 1327. In the present case, however, the prosecutor had been warned, indeed, ordered by the court, not to go into the defendant's prior driving record or the fact that he had been in jail. Yet the prosecutor deliberately chose to ask the same witness at the second trial if she had any reason to suspect that defendant was driving illegally on the evening in question. Such disregard of the court's order meets the criteria of " 'knowing' misconduct coupled with indifference toward the probable risk of a mistrial" required by the Oregon standard. *Id.*

It is not the intent here to definitively urge this court's adoption of the Oregon standard. It is to indicate the existence of alternative standards which reasonably balance both the defendant's and state's interests refuting the majority's contention that no fair alternative to the federal intent standard exists under which this defendant would receive relief from retrial. The standard applied by the Court of Appeals in this case, gross negligence constituting bad faith, is also a reasonable standard. The failure of the prosecutor to adequately prepare his witness so she would not repeat her mistake in the second trial, then deliberately asking her a question about the legality of defendant's driving after having been warned by the court not to do so, also raises the double jeopardy bar of the Minnesota Constitution to a third trial under either standard. I would affirm the decision of the Court of Appeals. The writ should be made absolute.

YETKA, J., took no part in the consideration or decision of this case.