**STATE of Minnesota, Respondent,**

v.

**Evelyn LONG, Appellant.**

**No. CX–95–1628.**

Court of Appeals of Minnesota.

March 19, 1996.

Hubert H. Humphrey, III, Atty. Gen., Susan Gaertner, Ramsey County Atty., Mark

Nathan Lystig, Asst. Ramsey County Atty., St. Paul, for respondent.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and KLAPHAKE and MULALLY,* JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Evelyn Long was tried on felony charges of attempted second-degree murder and first- and second-degree assault for stabbing her husband, David Long, on November 9, 1994. Minn.Stat. §§ 609.17; .19(1); .221; .222, subd. 2 (1994). During trial, over both parties' objections, the court sua sponte ordered a mistrial. The court denied appellant's subsequent motion to dismiss the charges on double jeopardy grounds, and this appeal followed. Because we conclude that there was no manifest necessity for the mistrial, double jeopardy bars appellant from being reprosecuted on the same criminal charges.

## FACTS

On November 9, 1994, appellant was arrested after stabbing her husband, David Long. At trial, appellant and David Long testified about their marital relationship and admitted that it included domestic violence, drug and alcohol abuse, and claims of infidelity. They both described an earlier physical dispute involving a knife, which resulted in appellant's hand being cut. They also had a long-standing dispute regarding David Long's fidelity, including an incident involving a woman calling their home from Saudi Arabia, where he had served in the military. According to both appellant and David Long, at the time of the stabbing they were separated, but appellant had allowed David Long to move back into her apartment on the condition that he provide some financial support.

David Long testified that on the evening of November 9 he came home after visiting a

friend and that he and appellant argued, first about finances and then about his fidelity. According to him, appellant eventually threatened to kill him if he was "messing around." He responded, "If you were going to kill me, why am I not dead for cheating on you in Saudi?" David Long testified appellant then went upstairs to the bathroom, came downstairs within a couple of minutes, went into the kitchen, returned with a knife and stabbed him as he sat in a living room chair.

Appellant testified that she told David Long that she wouldn't allow him to "use" her by living at her house while seeing another woman and that if he did, "it's going to be a whole lot of hell." She viewed his statement about "Saudi" as an admission of infidelity. She claimed that she stood up to slap him, and he pushed her onto the couch. She then went into the kitchen with David Long "following right behind" her. She retrieved the knife, he backed towards the front door and tripped into a chair. When he stood up, he made a gesture toward her. Thinking he was trying to obtain the knife from her to stab her, she stabbed him.

The defense rested after appellant testified. The state then attempted to call Sergeant Richard Freichles as a rebuttal witness to impeach appellant's testimony with contrary statements she had made to him during a police interview the day after the stabbing. During a bench conference, the prosecutor apparently discovered and then disclosed for the first time the existence of a taped recording of the interview. The state had disclosed Freichles' report, which did not refer to the tape. Defense counsel moved for a mistrial for prosecutorial misconduct and failure to disclose the tape.

After listening to the tape, the court noted that it was consistent with appellant's testimony in some respects and inconsistent in others. The two differences noted by the court pertained to whether appellant admitted to going upstairs before she stabbed David Long and whether David Long was

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

under the influence of alcohol at the time of the stabbing.

Because appellant wished to proceed with trial and allow the jury to hear the tape, her counsel moved to withdraw the mistrial motion. The trial court allowed the defense to withdraw the motion but granted a mistrial on its own motion. In its later order denying defendant's motion to dismiss on double jeopardy grounds, the court stated that it had granted the mistrial, in part, because

> to have gone forward with the trial without using the tape would have deprived both parties of crucial and significant evidence supporting their respective cases; [and] to have gone forward with the trial with the tape being played for the jury would have unfairly prejudiced the defendant because regardless of any further explanation or instruction, the jury would have been left with the impression that the defendant had lied in her earlier testimony—thus injecting, unfairly, a new element into the jury's deliberations.

This appeal followed.

### ISSUE

Does double jeopardy bar appellant from being reprosecuted for stabbing David Long after the trial court granted a mistrial sua sponte in the first trial?

### ANALYSIS

Appellant claims that double jeopardy bars her from being prosecuted a second time on criminal charges stemming from the stabbing of David Long. The Fifth Amendment to the United States Constitution provides: "No person shall * * be subject for the same offense to be twice put in jeopardy of life or limb * * *." U.S. Const. amend. V; see Minn. Const. art. I, § 7 ("[N]o person shall be put twice in jeopardy of punishment for the same offense * * *."); Minn. Stat. § 609.035, subd. 1 (1994) ("[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses * * *."). The Double Jeopardy Clause pro-

hibits multiple punishment and successive prosecution. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

Jeopardy attaches when the jury is sworn. *Serfass v. United State*s, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); *State v. Fuller*, 374 N.W.2d 722, 726 (Minn.1985). Under exceptional circumstances, the trial court may declare a mistrial after the jury is sworn without placing the defendant in double jeopardy. *Gori v. United States*, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); *State v. McDonald*, 298 Minn. 449, 453–54, 215 N.W.2d 607, 609–10 (1974).

When a trial court grants a mistrial over a defendant's objection, double jeopardy bars a new trial unless there is a "manifest necessity" for granting the mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *Fuller*, 374 N.W.2d at 726. A trial court's mistrial determination is discretionary and depends on the facts of each case. *McDonald*, 298 Minn. at 454, 215 N.W.2d at 610; *see Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973) (recognizing that "[w]hile virtually all of the cases turn on the particular facts and thus escape meaningful categorization," trial judges generally declare mistrials for "public justice" policy reasons).

While declining to define "manifest necessity" precisely, the Supreme Court has noted that a "high degree" of necessity is required before a trial court may grant a mistrial. *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 830–31, 54 L.Ed.2d 717 (1978).[1] The Eighth Circuit has indicated that the "strictest scrutiny" should be given to cases involving unavailability of prosecutorial evidence or harassment or improper tactics by the prosecution, while "great deference" should be afforded mistrial decisions granted for "trial problems," such as deadlocked juries or "jury taint." *United States v. Dixon*, 913 F.2d 1305, 1311 (8th Cir.1990).

---

1. To date, Minnesota courts have not interpreted the double jeopardy clause of the Minnesota Constitution as offering broader protection than that

offered under the federal Constitution. *See State v. Fuller*, 374 N.W.2d 722, 726–27 (Minn.1985). Thus, we freely apply federal law to this case.

Federal courts have circumscribed the scope of the manifest necessity requirement. In holding that there can be no manifest necessity if other reasonable alternatives to mistrial exist, the Fourth Circuit stated: "[A] self-inflicted injury cannot be used to afford the government a second chance to prosecute * * *." *United States v. Shafer,* 987 F.2d 1054, 1059 (4th Cir.1993). The Eighth Circuit has indicated that a finding of manifest necessity must be based upon more than mere "[p]ractical considerations and speculation" regarding the effects of a mistrial on the defendant and the trial process. *United States v. Allen,* 984 F.2d 940, 942 (8th Cir. 1993). The Ninth Circuit has stated that a judge's erroneous but good-faith belief that manifest necessity exists does not "insulate the mistrial decision from appellate review and obviate a determination that the defendant's double jeopardy right has been violated." *United States v. Meza–Soria,* 935 F.2d 166, 171 (9th Cir.1991). Finally,

> even when the judge explains his or her reasons for declaring a mistrial, the record must support the explicit or implicit finding of "manifest necessity." This is especially true when the judge makes a *sua sponte* ruling over the defendant's objection.

*United States v. Sanders,* 591 F.2d 1293, 1299 (9th Cir.1979).

█ We conclude that this mistrial was not required by manifest necessity, because other reasonable alternatives to mistrial existed. Appellant's testimony was contrary to certain statements she made on the tape, and she was thus prejudiced by the state's non-disclosure of the tape prior to trial. After hearing the tape herself, however, appellant expressly withdrew her mistrial motion and acquiesced in the jury hearing the tape. Both the state and appellant agreed that the trial could continue by limiting the state's use of the tape. *Cf.* Minn. R. Civ. P. 37.02(b)(2) (allowing trial court to suppress evidence not disclosed prior to trial). The trial court considered a range of alternatives, including allowing Freichles to testify, but prohibiting him from referring to the tape, or allowing him to testify, but limiting his testimony to the subjects covered in his written report.

These were reasonable alternatives to the "very drastic remedy" of a mistrial. *See United States v. Elem,* 845 F.2d 170, 172 (8th Cir.1988). The reasonableness of these alternatives is even more apparent given the admissibility of appellant's testimony from the first trial and the tape in any further criminal proceedings against her. Additionally, because the court became aware of the tape during a bench conference, the jury was unaware of its existence. There was no error before the court when it ordered the mistrial. For these reasons, the court erred by disallowing appellant the opportunity to accept these alternatives and to exercise her right to submit the case to the jury. *See Shafer,* 987 F.2d at 1058.

## DECISION

Because the record in this case does not reveal manifest necessity for a mistrial, we conclude that the trial court's sua sponte declaration of a mistrial was an abuse of discretion and that the Double Jeopardy Clause bars reprosecution of appellant. We reverse the trial court's order and remand with directions to dismiss the complaint and discharge appellant.

**Reversed and remanded.**

LANSING, Judge, dissenting.

A reviewing court should give "special respect" to a trial court's declaration of a mistrial. *State v. Stillday,* 417 N.W.2d 728, 733 (Minn.App.1988), *review denied* (Minn. Mar. 18, 1988); *Arizona v. Washington,* 434 U.S. 497, 510, 98 S.Ct. 824, 832–33, 54 L.Ed.2d 717 (1978). The trial judge, listening to the tone of the argument and observing the reactions of the jurors, is in the best position to evaluate the manifest necessity of a mistrial. *Washington,* 434 U.S. at 513–14, 98 S.Ct. at 834.

The undisclosed taped statements alternately contradicted and reinforced Evelyn Long's sworn testimony. Issues relating to credibility are critical in cases when the only two witnesses to a crime contradict each other. I would defer to the district court's determination that the state's failure to produce the recorded statements resulted in un-

fair and unavoidable prejudice requiring a mistrial.

I respectfully dissent.