STATE of Minnesota, Petitioner,
Appellant,

v.

Evelyn LONG, Respondent.

No. CX–95–1628.

Supreme Court of Minnesota.

April 24, 1997.

Hubert H. Humphrey III, Atty. Gen., Susan Gaertner, Ramsey County Atty. by Mark N. Lystig, Asst. County Atty., St. Paul, for appellant.

John M. Stuart, State Public Defender by Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for respondent.

## OPINION

BLATZ, Justice.

Evelyn Long appeals to this court asking that she not be retried for stabbing her husband in the chest. Asserting the double jeopardy protections contained in both the United States and Minnesota Constitutions, she argues that the state is barred from prosecuting her a second time because the trial court's *sua sponte* declaration of a mistrial at the first trial was an abuse of discretion. The court of appeals agreed. *State v. Long,* 544 N.W.2d 786 (Minn.App.1996). We reverse.

The stabbing which gave rise to this appeal took place in a St. Paul apartment on the evening of November 9, 1994. The stabbing was precipitated by an argument between defendant and her husband, David Long, over finances and infidelity. After the stabbing, the husband spent 10 days in the hospital recovering from his injuries.

Authorities arrested defendant that evening. The next morning St. Paul Police Sergeant Richard Freichels questioned her. The sergeant prepared an 11–line written report and also made an audio tape recording of the interview. The tape contained additional statements from defendant that both contradicted and corroborated her in-court testimony. The problem that underlies this appeal is that only the written report was turned over to defendant prior to trial. Long did not learn of the taped statement until after testifying in her own defense.

The same day defendant spoke with Sgt. Freichels, the state charged her with two counts of assault in the second degree. The state amended the complaint prior to trial, and defendant was tried on the following counts: 1) attempted murder in the second

degree in violation of Minn.Stat. §§ 609.19, subd. 1 (1994) and 609.17 (1994); 2) assault in the first degree in violation of Minn.Stat. § 609.221 (1994); and 3) assault in the second degree in violation of Minn.Stat. § 609.222, subd. 2 (1994).

At trial the state contended that defendant stabbed her husband intentionally; defendant asserted she acted in self-defense. One question of fact that was critical to both theories was whether David Long was seated or standing when the stabbing occurred. David Long testified that he was sitting in a chair when his wife stabbed him. According to David Long, his wife first went upstairs for about 2 minutes, then into the kitchen and returned to the living room with a knife in her hand. She then asked him, "Do you know why you are not dead yet?" and stabbed him with a knife. David Long told police that he had not touched defendant before she stabbed him.

The only defense witness was defendant, who testified that prior to the stabbing she was on the couch and that David Long had pushed her "so hard the couch pushed into the wall." Defendant stated that David Long then followed her into the kitchen where she grabbed a knife and when she turned around, David Long started backing up and fell into a chair. Defendant testified that, when he then stood up, she stabbed him out of fear for her personal safety.

On cross-examination, the prosecutor asked defendant about an interview with Sgt. Freichels. Defendant claimed that she did not remember Sgt. Freichels. She also said she did not recall telling the sergeant that she stabbed David Long while he was seated.

At the conclusion of defendant's testimony, the defense rested and the state called Sgt. Freichels as a rebuttal witness. It was at this point that both the judge and defendant became aware that defendant's interview with the sergeant had been tape recorded. During a bench conference, the prosecutor advised the judge that the sergeant had the tape with him and that it had not been given to defendant. The prosecutor later explained that she had no knowledge of the tape until the last day of trial when she considered calling the sergeant as a rebuttal witness. She said she told him on that day to prepare to testify at trial and asked whether a tape existed. The sergeant said he did not think there was a tape but upon checking, he found one.[1] The prosecutor then advised him to review the tape to see if there was anything on the tape that differed from his 11–line written report.

Following the bench conference, and prior to any further discussion of the sergeant's testimony, the court excused the jury. The prosecutor then explained to the judge that the tape recording differed from the sergeant's written report in that there were two additional statements on the tape: 1) defendant alleged that her husband had been drinking (something she had not discussed in her testimony); and 2) defendant said she had gone to the bathroom prior to getting the knife from the kitchen (something she had denied on cross-examination).

Defense counsel objected to Sgt. Freichels' testimony as improper rebuttal evidence because his testimony would not rebut her testimony (defendant had testified she did not remember the interview). Further, defense counsel objected because the written report was incomplete and the tape recording was not properly disclosed prior to trial. After the judge overruled defendant's objections, defendant moved for a mistrial based on prosecutorial misconduct because the prosecutor had not disclosed the taped interview prior to trial. The judge denied the motion.

Defense counsel subsequently moved for a limitation of the sergeant's testimony as a sanction based on the alleged discovery violation. Defense counsel asked that the scope of the sergeant's testimony be confined to the written report. The judge found such a sanction inappropriate, noting he knew of no other proceeding where a police officer was limited to testifying to the contents of a report, and concluded that the proper action was to give defendant an opportunity to re-

---

**1.** The stabbing took place after this court's decision in *State v. Scales*, 518 N.W.2d 587 (Minn. 1994). The police department's tape recording of the interview was consistent with *Scales* which requires that all custodial interrogations at places of detention be recorded. *Id.* at 592.

view the tape so the parties would know what was on it. The judge and both counsel then listened to the tape in chambers. The tape was never entered into evidence.

When the trial resumed, the judge noted that the tape's contents both supported and contradicted defendant's testimony, as well as her husband's. The judge also stated to the parties that he preliminarily decided that the only remedy for the late tape discovery may be a mistrial, after which he consulted with another judge who independently agreed with his assessment. In the trial judge's view, it would be like trying to "unring a bell." In his own words:

> The essence of this case comes down to which party is believed, David Long or the defendant. And in many respects—and it seems to me that the prejudice to the defense at this point is that while the defendant does not remember making her statement to Sergeant Freich[el]s, and, in fact, had testified she did not remember Sergeant Freich[el]s, that had the tape been available prior to trial for her to review and to listen to that, that may have jogged her memory and would have allowed her to testify accordingly.

> If it had not jogged her memory and she still did not have any independent memory having heard the tape, she would at least know what she had said in her own voice at the time, and it's unlikely that she would have contradicted herself.

> * * * *

> All of that has kind of led me to the point of thinking that there is no way to fix this with this jury; that to proscribe limits to Sergeant Freich[els'] testimony is not appropriate; that the information on the tape is crucial to both sides in terms of argument and the interests of justice are certainly served by all of that information going to a jury to evaluate the testimony.

In explaining his decision, the judge discussed two of the alternatives to a mistrial that he considered and rejected. One option was to play the tape for the jury and explain the reason for the late disclosure. The judge, however, expressed great reservations about doing so because he was concerned about the tape's impact on the jury. He also believed that it would be impossible to instruct the jury in a way that would not affect their reaction to defendant's testimony and he explained to defendant that the jury, "[i]n particular, * * * may find that you lied on the stand and that you are trying—now that you are caught by the tape, that you are trying to explain it away." The option of not playing the tape was similarly rejected. The judge noted that some of the statements were exculpatory and that refusing to play the tape for the jury would not "serve the ends of justice."

A recess was called to allow defense counsel to listen to the tape with defendant. After reviewing the tape with defendant, defense counsel withdrew his motion for a mistrial. He reported that he had explained the judge's concern about the tape to defendant and advised her of all of her rights. Nevertheless, defense counsel informed the court that defendant wanted the trial to continue and made clear that he was making this request on behalf of defendant. Defense counsel stated that defendant was vested in the current jury, that the trial had been painful, and that defendant wanted the jury to hear the tape and let them evaluate it.

The judge then declared a mistrial *sua sponte*. In so doing, the judge expressed concern about fairness to both the state and the defendant. The judge also stated that further proceedings would need to be scheduled. Defendant brought a motion to dismiss, arguing that double jeopardy barred reprosecution of defendant. The judge denied the motion. Subsequently, the court of appeals reversed.

The question presented to this court is whether a second trial would be barred by double jeopardy because the trial court declared a mistrial *sua sponte* against defendant's wishes. To answer the question, this court must examine the extent of a trial court's discretion in declaring a mistrial *sua sponte*.

 The United States and Minnesota Constitutions prohibit placing a person twice in jeopardy. U.S.Const. amend. V; Minn. Const. art. 1, § 7. Double jeopardy protects

the individual from a second trial for the same offense and attaches when a jury is impaneled and sworn. *State v. McDonald,* 298 Minn. 449, 452, 215 N.W.2d 607, 609 (1974). The protection is not, however, absolute. *See United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion). When a mistrial has been declared, "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973).

More than 170 years ago, the United States Supreme Court first established the standard of appellate review for evaluating whether a trial court has properly exercised its discretion in declaring a mistrial over a defendant's objection. In *United States v. Perez,* the Supreme Court stated:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a *manifest necessity* for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.

22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824) (emphasis added).

In cases such as we have here, when a mistrial is declared without the defendant's consent, the "manifest necessity" standard controls. *See State v. Fuller,* 374 N.W.2d 722, 726 (Minn.1985); *State v. Gwara,* 311 Minn. 106, 108–09, 247 N.W.2d 417, 419 (1976) (citing the standard in terms of mistrial dictated by "manifest necessity" or "the ends of public justice"). A high degree of necessity—not absolute necessity—must exist before a mistrial is appropriate. *Arizona v. Washington,* 434 U.S. 497, 506, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

We review trial court decisions to declare a mistrial under an abuse of discretion standard. *See McDonald,* 298 Minn. at

454, 215 N.W.2d at 610. The trial court is best situated to decide whether, for compelling reasons, "the ends of substantial justice cannot be attained without discontinuing the trial." *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961). "[T]he overriding interest in the evenhanded administration of justice" requires that we accord "the highest degree of respect" to the trial court's evaluation that a mistrial was necessary. *Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. at 833. As the Supreme Court recognized in *Arizona v. Washington:*

> The interest in orderly, impartial procedure would be impaired if [the judge] were deterred from exercising that power by a concern that any time a reviewing court disagreed with [the judge's] assessment of the trial situation a retrial would automatically be barred.

*Id.* at 513, 98 S.Ct. at 834. The trial court's discretion, however, is not unbridled; it "must be used with caution and only to serve the ends of public justice." *McDonald,* 298 Minn. at 454, 215 N.W.2d at 610. "[E]ach case must be decided upon its own facts." *Id.*

Although the United States Supreme Court has avoided establishing clear-cut guidelines as to what constitutes manifest necessity, federal case law has set forth certain criteria upon which a court's discretion can be measured. The manifest necessity standard "is a flexible standard which seeks fairness to the defendant, the government, and the public interest alike." *United States v. Givens,* 88 F.3d 608, 613 (8th Cir. 1996). In reviewing a trial court's exercise of discretion and in determining whether the mistrial was manifestly necessary, one thing we consider is whether the court adequately assessed less drastic alternatives. *See United States v. Dixon,* 913 F.2d 1305, 1311 (8th Cir.1990) (holding that consultation with counsel and consideration of available alternatives are consistent with exercise of sound discretion). We also look to see whether the court gave "careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding." *Arizona v. Washington,* 434 U.S. at 516, 98 S.Ct. at 835.

The court "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Id.* at 514, 98 S.Ct. at 835 (quoting *Jorn,* 400 U.S. at 486, 91 S.Ct. at 558).

■ The court of appeals decided that manifest necessity did not mandate a mistrial in the instant case because other "reasonable alternatives" existed. *Long,* 544 N.W.2d at 789. The court of appeals concluded that prohibiting Sgt. Freichels from mentioning his report or limiting his testimony to the subjects listed in his report were reasonable alternatives to a mistrial. *Id.* We disagree with the court of appeals' analysis.

Here, the judge was well within his discretion. The judge did not act precipitately. Rather, the record reflects that the judge engaged in a thorough review of alternatives ranging from playing the tape and explaining to the jury about its late disclosure to refusing to play the tape. A significant portion of the trial transcript is dedicated to arguments on the issue. Immediately after declaring a mistrial, the judge specifically stated that he was "sensitive" to defendant's desire to conclude the case. As documented by the record, the judge clearly considered less drastic alternatives to mistrial and concluded that the ends of public justice would not be served unless a mistrial was declared.

Had defendant had the tape prior to trial, hearing her own voice may have reminded her of the interview and undoubtedly would have enabled her to better prepare for testifying. Even placing limitations on the state's use of the tape could not correct this problem. The credibility of defendant's testimony was crucial in light of her self-defense claim. Because defendant denied even talking to Sgt. Freichels, evidence that the interview even occurred could have been very damaging. It was not so much the contents of the tape that made a fair trial impossible, but that the tape existed. Finally, the judge properly rejected the option of refusing to play the tape since he had concluded that the tape included exculpatory material beneficial to defendant.

The thoughtfulness of the judge's decision is further evidenced by his subsequent written decision. In the court's order of May 3, 1995, the court concluded that several factors mandated a mistrial:

1) [D]efendant credibly denied any memory of her statement to Sergeant Freichels; 2) defendant had testified without having had the opportunity to refresh her memory by listening to the tape; 3) defendant's taped statement both supported and contradicted testimony of both the defendant and the other witnesses; 4) to have gone forward with the trial without using the tape would have deprived both parties of crucial and significant evidence supporting their respective cases; 5) to have gone forward with the trial with the tape being played for the jury would have unfairly prejudiced the defendant because regardless of any further explanation or instruction, the jury would have been left with the impression that the defendant had lied in her earlier testimony—thus injecting, unfairly, a new element into the jury's deliberations. The Court was faced with a classic "catch–22".

■ The judge's declaration of mistrial was not an abuse of discretion. We agree with the comment set forth in the court of appeals' dissent in this case. "A reviewing court should give 'special respect' to a trial court's declaration of a mistrial." *Long,* 544 N.W.2d at 789 (Lansing, J., dissenting) (quotations omitted). This deferential review is particularly appropriate in light of the fact that the judge declared a mistrial because he feared that neither defendant nor the state could receive a fair trial by an unbiased and impartial jury. *See McDonald,* 298 Minn. at 455, 215 N.W.2d at 610 (upholding defendant's retrial after trial court had declared a mistrial on prosecutor's motion based on concern of potential jury taint).

■ Even if, with the clarity hindsight affords, we were to conclude that there might have been some workable alternative available, we would not reverse on these facts. The belief that another judge might have proceeded in a different fashion does not

render one trial judge's declaration of mistrial error. *See Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. at 833. The judge's thoughtful and thorough evaluation of less drastic alternatives, as well as his consideration of defendant's interest in having her fate decided in one trial, demonstrates a meticulous exercise of discretion well within the embrace of the United States and Minnesota Constitutions.

■ Finally, we address the court of appeals' concern about defendant's trial testimony being used in a retrial. There is no guarantee that defendant will be confronted with her statements from trial or that the tape would be admitted in a second trial. The admissibility of evidence is vested in the sound discretion of the trial court. *State v. Willis,* 559 N.W.2d 693 (Minn.1997). The judge here recognized this and advised defense counsel that the tape would not necessarily be played at a retrial. Should defendant choose to testify at a second trial, we leave it up to the trial court to determine the admissibility of her prior testimony, the tape, and any limitations thereto.

The court of appeals is reversed and the case is remanded for trial.

GARDEBRING, Justice (dissenting).

Although it is my normal approach to defer to the decisions of trial courts in reviewing matters under the abuse of discretion standard, on these unusual facts, I must disagree with the majority that there was a manifest necessity to declare a mistrial. Therefore, I respectfully dissent.

What was the manifest necessity here? The tape contained only two statements that did not appear in Sgt. Freichels' written report: first, that Long said her husband had been drinking at the time of the stabbing, and second, that Long said she had gone to the bathroom before getting the knife from the kitchen. The first statement was not the subject of any testimony by Long, so it was irrelevant. The second statement was contradicted by her testimony and could, therefore, have been used for impeachment purposes. However, neither statement was critical to the state or to the

defense. Indeed the most damaging discrepancy between Long's trial testimony and the tape—whether her husband had been standing up or sitting down at the time of the assault—was present in the written report as well and so, was available for impeachment, irrespective of the trial court's ruling on the tape. Thus, I can only conclude that the potential impact of the tape—whether it was admitted or excluded—was marginal.

Weighed against the marginal importance of this evidence was the articulated wishes of the defendant to proceed, that is, in the words of the Supreme Court, "to conclude [her] confrontation with society through the verdict of a tribunal [she] might believe to be favorably disposed to [her] fate." *Arizona v. Washington,* 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717 (1978) (quoting *United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971)). Here the right of the defendant, in consultation with her counsel, to determine the course of her defense strategy and to make her own assessment of what was best for her, should have been accorded the highest respect. As thorough and cautious as the trial court was in determining how to deal with the surprise disclosure of the interview tape, it should not have pre-empted the defendant and her counsel's determination of what was in her best interests in defending the charges against her. There may indeed have been some prejudice to her case in admitting the tape in evidence, but, presumably for sound reasons known to her and her counsel—perhaps that she had established a positive rapport with this jury and the risk of prejudice was small compared with the loss of this particular jury as determiner of her guilt or innocence—she was willing to take that risk.

Because of the right afforded to the defendant to proceed once jeopardy has attached, the Supreme Court has established a high standard that must be met before the trial court may properly order a mistrial contrary to the wishes of the defendant. The trial court's power, under these circumstances, "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed.

165 (1824). The Supreme Court has also said that the judge's decision to declare a mistrial is a proper exercise of discretion where a jury cannot reach an impartial verdict or where a verdict could be reached, but would face certain reversal on appeal because of an "obvious procedural error." *Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). This court has said, similarly, that a defendant is "entitled to have the trial proceed to a finish by verdict, unless an *intervening necessity* prevents." *State v. McDonald,* 298 Minn. 449, 454, 215 N.W.2d 607, 610 (1974) (emphasis added) (quoting *State v. Sommers,* 60 Minn. 90, 91, 61 N.W. 907, 907 (1895)).

I cannot conclude that the jury's ability to reach an impartial verdict would have been jeopardized had the trial court chosen any of the alternatives available or that the choice of any of them would constitute an "obvious procedural error." Neither does this seem to be the kind of "plain and obvious cause" required by the *Perez* standard, nor can I identify the "urgent circumstances" which required the grant of a mistrial in the case of this defendant who, having been informed of her rights, earnestly wished to proceed. I see no "intervening necessity" here that was sufficient to deprive this defendant of her right to have the trial proceed to a finish by verdict.

Further, while none of the alternatives available was a perfect solution, given that such alternatives were acceptable to both the defense and the state and that the differences between the tape and the written statement were so inconsequential, any of them would have been preferable to the drastic measure of declaring a mistrial.

As a reviewing court, we are directed by the Supreme Court to satisfy ourselves that the trial judge exercised sound discretion in declaring a mistrial. *See Arizona v. Washington,* 434 U.S. at 514, 98 S.Ct. at 834. In spite of my general reluctance to overturn a trial court's discretionary decision, I conclude that, on these facts, the *sua sponte* decision to declare a mistrial was improper and a subsequent trial of Long would be a violation of the state and federal constitutional prohibitions on double jeopardy.

PAGE, Justice (dissenting).

I join in the dissent of Justice GARDEBRING.

STRINGER, Justice (dissenting).

I join in the dissent of Justice GARDEBRING.