STATE v. ROBERT LEE McDONALD.

215 N. W. 2d 607.

March 8, 1974—No. 43919.

*C. Paul Jones,* State Public Defender, and *Donald H. Nichols,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Kelly, MacLaughlin, and Mulally, JJ.

MacLaughlin, Justice.

This is an appeal from a judgment of conviction of burglary, Minn. St. 609.58, subd. 2(2). The principal issue is defendant's contention that he was twice placed in jeopardy for the same crime in violation of the constitutions of the United States and the State of Minnesota.

On June 6, 1972, after plea negotiations in which it was agreed that his sentence would be limited to a maximum of 1 year, defendant entered a plea of guilty to the charge of burglary before Ramsey County District Judge Hyam Segell. Upon examination by Judge Segell, defendant said that he was pleading guilty only because he did not believe that he could get a fair trial. Defendant indicated that he did not have faith in our system of justice; that he could not have committed the crime because he was intoxicated at the time; that even though he could procure witnesses who would testify that he could not have committed the crime the jury would not believe him or his witnesses; and that he had no choice but to accept the plea bargain because if he stood trial he would be convicted and sentenced to 10 years in prison instead of the 1 year agreed upon. Based upon defendant's remarks, Judge Segell refused to accept the guilty plea. Later that same day, at defendant's request, he went to trial before Judge Harold W. Schultz. Prior to recessing for the day, a jury was impaneled and the prosecutor delivered his opening statement.

In its afternoon edition of that day, June 6, 1972, the St. Paul Dispatch printed an article recounting the events surrounding the refusal of defendant's guilty plea by Judge Segell. The published article contained the substance of defendant's comments before Judge Segell including information that the guilty plea was rejected because of defendant's protestations of innocence. It stated that the maximum penalty for the crime charged was 10 years and included defendant's allegation that he was intoxicated at the time of the incident and had witnesses who would

testify that he could not have committed the crime. The following morning, prior to commencement of trial for that day, the prosecution moved for a mistrial, based upon the newspaper article. The motion was opposed by defendant's attorney, but Judge Schultz, without first polling the jury, granted the motion on the basis of adverse publicity which could result in an unfair trial.

While the record is not clear, it appears that many of the jurors sitting on the case before Judge Schultz had personally heard the colloquy between Judge Segell and defendant, which took place in an eighth-floor courtroom where prospective jurors in Ramsey County are occasional spectators while waiting to be called for actual jury service. It also appears, although again the record is understandably incomplete, that during the voir dire the jurors had been questioned about defendant's remarks to Judge Segell. Therefore, Judge Schultz, when discussing the reason for the mistrial with the jury, said:

"I think I can explain to you, many of you were questioned by counsel as to whether or not you were present in the courtroom on the eighth floor and heard some of the discussion between the Court and the defendant with respect to an attempted enter of a plea. None of us realized that there would be considerable publicity in last night's paper about it. But there have been a number of statements, all of which sort of create an atmosphere and a set of circumstances where there may be some doubt as to whether this defendant or the State can get a fair trial under all of these circumstances."

Because of the mistrial, defendant was retried on June 27, 1972, and a jury verdict of guilty was returned.

1. The prohibition against being placed twice in jeopardy for a criminal offense is found in Minn. Const. art. 1, § 7,[1] and

---

[1] Minn. Const. art. 1, § 7, provides in part: "No person * * * for the same offense shall be put twice in jeopardy of punishment * * *."

in the Fifth Amendment to the United States Constitution.[2] Both this court and the United States Supreme Court have held that, generally, jeopardy attaches when a jury is impaneled and sworn. State v. Sommers, 60 Minn. 90, 61 N. W. 907 (1895); United States v. Jorn, 400 U. S. 470, 91 S. Ct. 547, 27 L. ed. 2d 543 (1971). This is so because the prohibition of the double jeopardy clause is "not against being twice punished, but against being twice put in jeopardy." United States v. Ball, 163 U. S. 662, 669, 16 S. Ct. 1192, 1194, 41 L. ed. 300, 302 (1896). Similarly, this court has noted that the prohibition against double jeopardy is not to protect the individual against the peril of a second punishment but to protect him against a second trial for the same offense. State v. Thompson, 241 Minn. 59, 62 N. W. 2d 512 (1954); State v. Fredlund, 200 Minn. 44, 273 N. W. 353 (1937).

With this principle in mind, however, in Wade v. Hunter, 336 U. S. 684, 688, 69 S. Ct. 834, 837, 93 L. ed. 974, 978 (1949), the court said:

"* * * The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. * * * What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."

---

[2] U. S. Const. Amend. V provides in part: "No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb * * *." In Benton v. Maryland, 395 U. S. 784, 89 S. Ct. 2056, 23 L. ed. 2d 707 (1969), the United States Supreme Court made the Fifth Amendment guarantee against double jeopardy applicable to the states via the Fourteenth Amendment. Therefore, Federal standards and decisions in this area are controlling in the instant case.

Thus, circumstances may arise even after the jury has been impaneled and sworn in which the trial court may abort the proceedings and retry the defendant without violating the double jeopardy clause. United States v. Perez, 22 U. S. (9 Wheat.) 579, 6 L. ed. 165 (1824), has been extensively cited as setting forth the standard of appellate review for testing the trial court's exercise of its discretion in declaring a mistrial without the defendant's consent. In discussing reprosecution after the declaration of a mistrial without the defendant's consent, the Perez court said (22 U. S. [9 Wheat.] 580, 6 L. ed. 165):

"* * * We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

In Gori v. United States, 367 U. S. 364, 81 S. Ct. 1523, 6 L. ed. 2d 901 (1961), the defendant was convicted in a second trial after his first trial had been terminated by the trial court's declaration of a mistrial sua sponte and without the defendant's consent. In rejecting the defendant's claim of double jeopardy, the court said (367 U. S. 368, 81 S. Ct. 1526, 6 L. ed. 2d 904):

"* * * Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision,

the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment."

In State v. Sommers, *supra,* in considering the application of the defense of double jeopardy, we said that the defendant is "entitled to have the trial proceed to a finish by verdict, unless an intervening necessity prevents." 60 Minn. 91, 61 N. W. 907.

In any event, whether the standard for termination of the trial is described in terms of "manifest necessity" (United States v. Perez, *supra*), "reasons deemed compelling" (Gori v. United States, *supra*), or "intervening necessity" (State v. Sommers, *supra*), it is discretionary with the trial court, and that discretion must be used with caution and only to serve the ends of public justice. In discussing the application of these standards, we agree with the view expressed in United States v. Jorn, *supra,* that, despite the invitations of litigants, it is unwise to attempt to "formulate rules based on categories of circumstances which will permit or preclude retrial." 400 U. S. 480, 91 S. Ct. 555, 27 L. ed. 2d 554. In other words, each case must be decided upon its own facts.

Applying the Perez standard of "manifest necessity" to the facts of this case, we hold that the trial court did not abuse its discretion in ordering the mistrial. The court's primary motivation was its concern that the publicity could result in an unfair trial for either defendant or the state. Simmons v. United States, 142 U. S. 148, 12 S. Ct. 171, 35 L. ed. 968 (1891), which upheld the discretion of a trial judge who had ordered a mistrial based upon a newspaper article commenting upon evidence in trial, concluded as follows (142 U. S. 154, 12 S. Ct. 172, 35 L. ed. 971):

"There can be no condition of things in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that * * * by reason of outside influences

brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused."

So here, too, the trial court was exercising its discretion in an attempt to assure that both the state and defendant received an unbiased and impartial jury. The action of the trial court, in the very early stages of trial and before a single witness had been called, was not taken to harass defendant or to afford the prosecution a more favorable opportunity to convict him, but instead was taken as a necessary precaution in the interests of preserving the impartiality of the jury. In the exercise of that discretion, the trial court was no doubt convinced that the ends of public justice could not be served by a continuation of the proceedings.

A more troublesome question is the failure of the trial court to poll the jury to determine whether they had in fact read or seen the newspaper article and, if so, its potential effect upon them. We have concluded that while it would have been preferable to poll the jury, the failure to do so did not constitute sufficient error to justify reversal. Under the peculiar facts of this case, it is conceded by both defendant and the state that most members of the jury actually witnessed defendant's attempt to plead guilty. Hence, while there is little doubt that some members of the jury had read the newspaper article, there is no doubt that many members of the jury were aware of the substance of the article, even though they had not actually read it.

We hold that the trial court could reasonably believe, under these circumstances, that it was manifestly necessary in the interests of public justice to declare a mistrial and that there was no abuse of discretion. Therefore, defendant's retrial did not violate the double jeopardy clause.

2. Defendant also contends that the state improperly cross-examined him concerning his prior criminal record, specifically including an ordinance violation. We hold there was no error because (a) the evidence of the ordinance violation was first re-

vealed, in a confusing manner, by defendant on direct examination by his own counsel; and (b) there was no objection at trial by defense counsel to cross-examination by the prosecutor on this subject, and thus the issue is raised for the first time on appeal.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.