**STATE of Minnesota, Appellant,**

v.

**Carl Erskine WHITE, Respondent.**

**No. C3-85-156.**

Court of Appeals of Minnesota.

June 11, 1985.

Review Denied Aug. 20, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin County Atty., Paul R. Jennings, Asst. County Atty., Minneapolis, for appellant.

Phillip S. Resnick, Minneapolis, for respondent.

Heard, considered and decided en banc by POPOVICH, C.J., and PARKER, LANSING, HUSPENI, FORSBERG, RANDALL and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

The State appeals from the trial court's order dismissing charges of criminal sexual conduct in the first and third degrees on double jeopardy grounds. The trial court granted the prosecutor's motion for a mistrial before completion of the victim's direct testimony, based on allegedly prejudicial remarks in the prosecutor's opening statement. Subsequently, the trial court granted defendant's motion for dismissal. We reverse and remand for trial with costs and attorney's fees assessed against the State for this appeal and for the first trial.

### FACTS

During the opening statement at the trial of respondent Carl White on charges of criminal sexual conduct in the first and third degrees, the prosecutor mistakenly told the jury that the victim had a form of gonorrhea and White did not. The court declared a noon recess before the victim's direct testimony was completed. During the recess the prosecutor learned of his error.

In chambers the prosecutor moved for a mistrial based on his comment during opening statement. The trial court agreed that the information regarding gonorrhea "should not be in there." In discussing a motion for a mistrial, the trial judge said, "Do I have a right to do it?" Defense counsel replied, "Sure you do." The following exchange then took place:

MR. COLICH: [The information regarding gonorrhea] should not be in, and

perhaps I am in error for not being more careful in double checking. * * * I don't take lightly the fact that I would be asking for a mistrial based on my comment to the jury on something that they shouldn't have heard, but I don't want to cost [the complainant] her day in court on my error.

THE COURT: Do you want to respond?

MR. RESNICK: I don't know what I can say. I think the court has the power to do it.

THE COURT: Well, maybe that's the thing to do. It certainly would be a cleaner trial. I am concerned about this.

MR. COLICH: I take full responsibility for it. * * * [T]o be honest with you, this will give me an opportunity to let Mr. Resnick know what I am going to present and make some pre-trial motions which I should have done in the first place. * * *

THE COURT: All right. I will declare a mistrial in this case.

The trial judge then made these remarks in dismissing the jury:

I am declaring a mistrial in this case. It doesn't happen very often. What that means is that the case will have to be tried again, and that I am excusing you from sitting as members of the jury. I'm sorry about that. I always am, because it means double time for other—I will explain it—other jurors to come in to sit through what you have sat through; it means that the defendant has to stand through trial again, his attorney has to come through it again. It means the prosecutor has to go through it all again, and the judge has to go through it all again, and all I can tell you is that unless I felt a serious problem had occurred in this trial, unless I felt that it just could not go forward as a fair trial. You have to accept my telling you that, I guess, accept it on faith, if you would, that is the only reason that I or any judge would ever grant a mistrial and to make everyone go through all this again. It's only if I believed as honestly as I can believe anything, that this simply would not be fair to either the State or to the

defendant, and with that, I thank you very much * * *.

After a new trial date was set, White made a pretrial motion to dismiss the charges on grounds of double jeopardy. The trial court filed an order to dismiss on January 14, 1985. A copy of the order was hand-delivered to the prosecutor's office on January 22, 1985. The prosecutor notified the trial court of the State's intent to appeal that day and filed a notice of appeal two days later.

## ISSUES

1. Was appellant's notice of appeal timely filed?

2. Is reprosecution of respondent after a mistrial barred by double jeopardy?

## DISCUSSION

### I

White argues that the State's notice of appeal was untimely and the appeal should be dismissed. The pretrial order was filed on January 14, 1985. For unknown reasons the order was not received by the county attorney's office until a copy was hand-delivered on January 22, 1985. White acknowledges these facts in his brief.

■ On the day the order was hand-delivered the county attorney's office notified the trial court of the State's intent to appeal. A notice of appeal was filed two days later.

Minn.R.Crim.P. 28.02, subd. 2, provides in part:

(1) Stay. Upon oral notice that the prosecuting attorney intends to appeal a pretrial order, the trial court shall order a stay of proceedings of five (5) days to allow time to perfect the appeal.

(2) Notice of Appeal. Within five (5) days after entry of the order staying the proceedings, the prosecuting attorney shall file with the clerk of the appellate courts a notice of appeal * * *.

We hold the notice of appeal was timely because the county attorney's office filed it two days after receiving actual notice of the order and giving the trial court notice of intent to appeal.

## II

■ The United States and the Minnesota Constitutions contain a prohibition against twice being placed in jeopardy. U.S. Const.Amend. V; Minn. Const. art. 1, § 7. Generally, jeopardy attaches once a jury is impaneled. *State v. McDonald,* 298 Minn. 449, 452, 215 N.W.2d 607, 609 (1974). In cases where a mistrial has been declared before a verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the double jeopardy clause bars retrial. *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973).

■ In some circumstances, even after the jury is impaneled, the trial court may abort the proceedings and retry the defendant without violating the double jeopardy clause. If a mistrial is declared with the defendant's consent, he is deemed to have waived any double jeopardy claim he might otherwise have. *United States v. Dinitz,* 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). If, on the other hand, the defendant wishes to proceed to a verdict by the jury and the court declares a mistrial over the defendant's objection, the double jeopardy clause will bar retrial unless the mistrial was dictated by "manifest necessity" or the "ends of public justice." *See, e.g., Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *State v. McDonald,* 298 Minn. 449, 453, 215 N.W.2d 607, 609 (1974). The only circumstance in which the defendant's consent to a mistrial does not operate as a waiver of the right to claim double jeopardy is where the prosecutor or the judge intentionally provokes the defendant to request the mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 675–76, 102 S.Ct. 2083, 2089–90, 72 L.Ed.2d 416 (1982).

■ In granting defense counsel's subsequent motion to dismiss on the ground of double jeopardy, the trial court, in a memorandum not made a part of the order, said, "this court is unwilling to regard mere acquiescence as sufficient for consent." This distinction appears to be without support in the law. The defendant's consent to a mistrial need not be express but may be implied from the totality of the circumstances. *United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973). While a failure to object to a mistrial may not, in and of itself, constitute consent, it is a factor to be considered. *United States v. Goldman,* 439 F.Supp. 358, 362 (S.D.N.Y.), *affd.,* 573 F.2d 1297 (1st Cir.1977).

In *United States v. Smith,* 621 F.2d 350 (9th Cir.1980), the trial court declared a mistrial on the second day of trial after learning that a juror could not appear and that no alternate juror had been selected. The defendant did not expressly consent to the mistrial. In holding that the defendant had impliedly consented, the court relied on defense counsel's in-chambers discussions, before the jury had been dismissed, demonstrating counsel's "understanding that there could and would be a retrial." *Id.* at 352. The importance of counsel's communication of his position is apparent from the court's footnote: "Until the jury was actually excused, the court might have reconsidered its intention to declare a mistrial." *Id.* at 352 fn. 2.

■ In the present case, defense counsel was given an adequate opportunity to make his position known, but he failed to say anything indicating he wished to proceed with the trial. *Compare Henderson v. Wright,* 533 F.Supp. 1373, 1376 (D. Maine 1982) (no consent implied because the defendant had no opportunity to object). The record shows he understood that the trial court and the prosecutor intended a retrial. His responses appear calculated to encourage the trial court to grant a mistrial, without making his consent express. Under these circumstances the only reasonable conclusion is that defense counsel impliedly consented to the mistrial. There is no finding, nor could there be on this record, that the mistrial was intentionally provoked. Therefore, the trial court erred in subsequently ruling that double jeopardy barred retrial because the defendant did not consent.

Even if White is not considered to have consented, the mistrial was justified on grounds of serving the "ends of public justice." The trial court is in the best position to evaluate possible jury bias, and its evaluation should be accorded "the highest degree of respect." *Arizona v. Washington*, 434 U.S. at 511, 98 S.Ct. at 833; *see also State v. McDonald*, 298 Minn. at 454, 215 N.W.2d at 610. In *State v. McDonald*, the Minnesota Supreme Court concluded that the double jeopardy clause did not bar retrial when, on the prosecutor's motion, opposed by defense counsel, the first trial was aborted on the basis of adverse publicity which could have resulted in an unfair trial:

> [W]hether the standard for termination of the trial is described in terms of "manifest necessity," "reasons deemed compelling," or "intervening necessity," it is discretionary with the trial court, and that discretion must be used with caution and only to serve the ends of public justice. In discussing the application of these standards, we agree * * * that, despite the invitations of litigants, it is unwise to attempt to "formulate rules based on categories of circumstances which will permit or preclude retrial." In other words, each case must be decided on its own facts.

> \* \* \* \* \* \*

> [Here] the trial court was exercising its discretion in an attempt to assure that both the state and defendant received an unbiased and impartial jury. The action of the trial court, in the very early stages of trial and before a single witness had been called, was not taken to harass defendant or to afford the prosecution a more favorable opportunity to convict him, but instead was taken as a necessary precaution in the interests of preserving the impartiality of the jury. In the exercise of that discretion, the trial court was no doubt convinced that the ends of public justice could not be served by a continuation of the proceedings.

298 Minn. at 454, 215 N.W.2d at 610.

In this case the record, particularly the trial court's contemporaneous explanation to the jury, reflects the trial court's conclusion that a mistrial was necessary because of the jury's possible bias:

> [T]he only reason that I * * * would ever grant a mistrial and to make everyone go through all this again * * * it's only if I believed as honestly as I can believe anything, that this simply would not be fair to either the state or to the defendant.

The trial court did not act precipitately but gave defense counsel and the prosecutor full opportunity to explain their positions. *See Arizona v. Washington*, 434 U.S. at 515–516, 98 S.Ct. at 835–836. The court considered a less drastic measure—a cautionary instruction—and rejected it as inadequate. Under the facts of this case, the trial court exercised sound discretion in declaring a mistrial to preserve the impartiality of the jury. Neither party has a right to have the case decided by a jury which may be tainted by bias. *See id.* at 516, 98 S.Ct. at 835. The public's interest in fair trials designed to end in just judgments must prevail over the defendant's right to conclude his trial before the first jury impaneled. *See id.*

In addition, the victim has an interest in seeing her complaint prosecuted. It would erode public confidence in the efficacy of the justice system to dismiss the charges because of unintentional jury bias created by the prosecutor under circumstances that did not otherwise prejudice the defendant.

The inconvenience and expense to White can be mitigated by an award of attorney's fees. White is entitled to attorney's fees on the State's appeal pursuant to Minn.R. Crim.P. 28.04, subd. 2(6):

> Reasonable attorney's fees and costs incurred shall be allowed to the defendant on such appeal which shall be paid by the county in which the prosecution was commenced.

Upon a proper submission this court will award attorney's fees and costs in this court as well as attorney's fees and costs incurred by White in the first trial. The interests of justice require that White be

relieved of the double expense attributable to prosecutorial error.

### DECISION

We reverse and remand for trial. We retain jurisdiction of the question of attorney's fees and costs.

Reversed and remanded.

FORSBERG and HUSPENI, JJ., concur specially.

POPOVICH, C.J., and RANDALL, J., dissent.

FORSBERG, Judge, concurring specially:

I concur with the decision of the court. I would, however, base my decision solely on the ground that the defendant waived a claim of double jeopardy by failing to object to the motion for a mistrial.

HUSPENI, Judge, concurring specially:

I join in the special concurrence of Judge Forsberg.

RANDALL, Judge, dissenting.

I respectfully dissent from the opinion of the majority and would affirm the decision of the trial court to bar reprosecution on the grounds of double jeopardy.

The majority opinion quotes the on-record conversation between the trial court, prosecutor and defense counsel. In chambers after the prosecutor moved for a mistrial based on his own comments during the opening argument, the trial court asked defense counsel if she had the right to grant a mistrial, and defense counsel answered, "Sure you do." Shortly thereafter, the prosecutor made a motion on the record for a mistrial. The trial court offered defense counsel the opportunity to respond. Defense counsel stated that he did not know what he could say, but he felt the court had the power to grant the mistrial.

The majority opinion settles on a subjective interpretation of that conversation to the effect that the defense attorney's answers to the trial court's questions were lacking in candor. In examining the verbatim conversation, I find no overt lack of candor, much less overt deceit.

When defense counsel later made a formal motion to dismiss, the trial court found that his answers did not rise to the level of consent to a mistrial. The trial court, in its memorandum sustaining the motion to dismiss, found, and I agree, that:

> It is true that defense counsel could have noted an objection to the motion in an unambiguous fashion; however, since the question of consent involves essentially the waiver of a constitutional protection, this court is unwilling to regard mere acquiescence as sufficient for consent.

The trial court alone was privy to that conversation in chambers and is undeniably in the best position to interpret what she asked defense counsel and what he responded. I find no basis to declare the court's interpretation of the facts clearly erroneous as a matter of law, nor do I find the trial court misinterpreting the law on the question of second trials in criminal prosecution when there has been a finding that defendant did not consent to the first mistrial.

The trial court correctly found that if the mistrial was declared without defendant's consent, then the case could be retried only if the mistrial was dictated by "manifest necessity or the ends of public justice." *State v. Gwara*, 311 Minn. 106, 108, 247 N.W.2d 417 (1976); *United States v. Perez*, 9 Whet 579, 6 L.Ed. 165 (1824).

The trial court concluded that manifest necessity was not present. The court balanced the defendant's right to avoid multiple trials and the state's interest in having at least one full and fair opportunity to present its case. *See Arizona v. Washington*, 434 U.S. 497, 507, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978).

The majority opinion holds that defense counsel impliedly consented to the mistrial and thus the trial court erred. They base this interpretation on the "totality of the

circumstances." *See United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973). With the majority opinion conceding that consent was not express and had to be determined from the circumstances, it becomes a finding of fact. The trial court's decision is to be reviewed in light of Minnesota Rules of Civil Procedure 52.01:

> Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

As expressed above, I find no such clear error.

The court, finding that manifest necessity did not dictate a second trial, noted:

> It would be unfair to permit a retrial in this case. The mistrial resulted from a prosecutorial error that created a bias in favor of defendant. Defendant's constitutional protections should not be subrogated to permit the prosecution to correct its own error through a new trial.

I find this analysis persuasive. The prosecutor made, at least in his own mind, a poor opening argument and wanted the relief of a second trial to start over. It can be said as a general proposition that the prosecution does not have the right to make opening statement after opening statement until it gets a good one that it feels it can live with.

I do not find *State v. McDonald,* a decision relied upon by the majority, controlling. In that case prospective jurors, shortly before trial, had been exposed to a plea of guilty by the defendant pursuant to a plea bargain which the court rejected. Those facts involve neither prosecutorial nor defense misconduct. The court was justified in declaring a mistrial and permitting a second trial. The court there had no way of knowing exactly what the jurors had overheard, nor what impression it made on them, nor whether what they might have overheard would be neutral, favor the prosecution or the defense.

To me, that is an essential difference between *McDonald* and the case we are deciding. Here it is undisputed that the prosecutor made what he felt was an error in his opening argument and wanted a second trial out of concern that he had inadvertently hampered his chances for a conviction.

I cannot disagree with the trial court finding that a careful balancing of the rights of the State and those of the defendant resulted in a bar to the second trial on the grounds that jeopardy had attached in the first, and that none of the stated exceptions to the prohibitions against second trial once jeopardy attaches were present.

I agree that the question is close. Had the trial court, after listening to defendant's motion to dismiss the charges on the basis of double jeopardy, denied it and the defendant appealed, I cannot predict my decision on those hypothetical facts. Here, the trial court, uniquely on top of the facts, decided that the defendant should not have to stand trial a second time; I feel the correct decision is to affirm the trial court.

The majority opinion concludes that the public's interest in a fair trial and a just judgment and the victim's interest in seeing the complaint prosecuted override, in the balancing test, the rights of the defendant. I find otherwise. Double jeopardy is a constitutional issue of the first magnitude. U.S. Const.Amend. V., Minn. Const. Art. I, Sec. 7.

Double jeopardy was not written into the United States and Minnesota Constitutions for the purpose of protecting victims. Arguably, if there is no second trial, there is now not fairness to the victim. However, when the defense of double jeopardy is successfully raised, there is no second trial for the victim, not because the victim is not hurt nor because the victim has no rights, but because under the Constitution the greater good prevails, i.e. the government is allowed just one chance to deprive a citizen of life, liberty and property.

I would affirm the decision of the trial court.

POPOVICH, Chief Judge, dissenting.

I agree with the dissent of Judge Randall and would affirm the trial court which was in the best position to evaluate the events leading to the granting of the mistrial and the subsequent motion to dismiss based on the ground of double jeopardy. Implied acquiescence or consent by defense counsel under the facts here did not clearly exist sufficient to deprive defendant of the constitutional protection.