STATE of Minnesota, Respondent,

v.

Susan LEROY, Appellant.

No. C0–98–1247.

Court of Appeals of Minnesota.

May 11, 1999.

Review Granted July 28, 1999.

Mike Hatch, Attorney General, St. Paul; and David J. Hauser, Otter Tail County Attorney, Michelle M. Eldien, Assistant County Attorney, Fergus Falls, for respondent.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for appellant.

Considered and decided by PETERSON, Presiding Judge, FOLEY,

Judge,* and HOLTAN, Judge.

## OPINION

HOLTAN, Judge.**

Appellant argues that double jeopardy bars her retrial on a fifth-degree assault charge on which the jury voted to acquit before declaration of a mistrial. We affirm.

## FACTS

Appellant Susan Leroy was tried on one charge of disorderly conduct and one charge of fifth-degree assault. After receiving the verdict forms from the jury foreperson, the trial court discovered that the jury had received a copy of the amended complaint. Nonetheless, the court read the verdict forms aloud, pronouncing appellant guilty of disorderly conduct but not guilty of fifth-degree assault, and asked the jurors, "Is this your verdict, so say you one and all?" After the jurors answered affirmatively, they were temporarily removed from the courtroom.

The court determined that the court administrator had mistakenly given the jury the copy of the amended complaint. Appellant's counsel moved for a mistrial, which the court granted. The court ordered a retrial, then recalled and dismissed the jury.

Appellant subsequently moved to bar retrial on the fifth-degree assault charge on the basis of double jeopardy, and argued that its motion for a mistrial was in substance a motion for a new trial on the charge of disorderly conduct. The trial court denied appellant's motion, and this appeal followed.

## ISSUE

Do the double jeopardy provisions of the United States Constitution or Minnesota Constitution bar appellant's retrial on the charge of fifth-degree assault?

## ANALYSIS

■■■ The double jeopardy clauses of the constitutions of the United States and Minnesota protect criminal defendants from multiple prosecutions for the same offense. U.S. Const. amend. V; Minn. Const. art. I, § 7. "The appellate court reviews de novo the constitutional issue of double jeopardy." *State v. Watley*, 541 N.W.2d 345, 347 (Minn.App.1995), *review denied* (Minn. Feb. 27, 1996).

■■■ "[J]eopardy attaches when a jury is impaneled and sworn." *State v. McDonald*, 298 Minn. 449, 452, 215 N.W.2d 607, 609 (1974). Double jeopardy "applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984).

We conclude that appellant's original jeopardy did not terminate before the court declared a mistrial because the jury's verdict of acquittal on the fifth-degree assault charge never became final. For this reason, appellant cannot now assert a valid claim of double jeopardy.

■■ A verdict returned by the jurors may not be completed unless it is a verdict "such as the court may receive." Minn. Stat. § 631.17 (1998). Here, the court knew, at the time it received the verdicts, that a copy of the complaint against appellant had been accidentally given to the jury. The verdicts were not "such as the court may receive" because the court knew they were potentially tainted by the jury having access to prejudicial information in the complaint. *See State v. Cox*, 322 N.W.2d 555, 558 (Minn.1982) ("exposure of a jury to potentially prejudicial material creates a problem of constitutional magni-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tude"). They were not receivable, if at all, until there had been a proper inquiry that disclosed no prejudice. *See* Minn. R.Crim. P. 26.03, subd. 9 (prescribing inquiry when suspicion of juror prejudice). Thus, these verdicts were not capable of completion, and the original jeopardy did not terminate.

We are convinced that this disposition works no prejudice to appellant. The record does not indicate that the trial court or appellant treated this verdict as final. Appellant moved for a mistrial, and the judge did not discharge the jury before appellant's motion. *See* Minn.Stat. § 631.17 (jury discharged when verdict complete); Minn. R.Crim. P. 26.04 (listing postverdict motions and not including mistrial).

## D E C I S I O N

We conclude that the jury's verdict of acquittal on the fifth-degree assault charge against appellant never became final. Because appellant's original jeopardy never terminated, she cannot now assert a valid claim of double jeopardy. The trial court properly denied appellant's motion to bar retrial on the charge of fifth-degree assault, and appellant may now be retried on both the charge of disorderly conduct and the charge of fifth-degree assault.

**Affirmed.**

PETERSON, Judge (dissenting)

I respectfully dissent because I disagree with the majority's conclusion that the verdict was not "such as the court may receive." Citing *State v. Cox*, 322 N.W.2d 555, 558 (Minn.1982), the majority concludes that the verdict returned by the jury was not "a verdict such as the court may receive."

*State v. Cox* did not consider when a verdict is such that it may be received by the court. I am not aware of any Minnesota criminal case that has explained when a verdict is such that the court may receive it. There are, however, civil cases that shed some light on the meaning of this phrase.[1] *Craven v. Skobba*, 108 Minn. 165, 121 N.W. 625 (1909), *Strite Governor Pulley Co. v. Lyons*, 129 Minn. 372, 152 N.W. 765 (1915), and *Peterson v. Anderson*, 183 Minn. 86, 235 N.W. 534 (1931), all involved trial proceedings during which a jury returned a verdict to the court, but the court refused to accept the verdict and sent the jury back to continue its deliberations.

In *Craven*, the supreme court found that the trial court did not err when it refused to accept the verdict. 108 Minn. at 168, 121 N.W. at 626. The court explained:

The jury, after having deliberated for some time, returned into court and reported a verdict for plaintiff for the sum of $80. This the court refused to accept, for the reason that it was not proper in any view of the case, and wholly in conflict with its instructions. Further instructions were then given, and the jury retired for further deliberations, after which they returned a verdict in favor of plaintiff for $12, which the court accepted. There was no error in the proceedings of the court on this subject. A court has the undoubted right to refuse to accept a verdict which is not in accord with the law and evidence by which the rights of the parties are to be determined.

*Id.*, 108 Minn. at 169, 121 N.W. at 626–27.

In *Peterson*, the supreme court found that the trial court erred when it refused to accept a jury verdict in a wrongful death action. 183 Minn. at 88, 235 N.W. at

1. Minn.Stat. § 546.24 (1998), which applies to civil trials, states:

When the verdict is given, and is such as the court may receive, the court administrator shall immediately file said verdict in open court, and read it to the jury, and inquire of them whether it is their verdict.

If any juror disagrees, the fact shall be entered in the minutes, and the jury sent out again; but if no disagreement is expressed, the verdict is complete, and the jury shall be discharged from the case. The court administrator shall forthwith record such verdict in full in the court minutes.

535. The *Peterson* court cited *Craven* and *Strite Governor Pulley Co.*, and explained that

> where a jury is to determine the amount of an unliquidated demand, the court may do no more than state the rules of law to be followed and applied in assessing the same. The court may not substitute its judgment for that of the jury as to the sum to be awarded, or indicate beforehand that a certain sum is too small and a verdict of that amount will not be accepted. * * * In litigation involving contracts, verdicts are often matters of computation from well-established data testified to by witnesses, and in such cases the court may well upon inspection determine that a verdict returned is not supported by any computation possible under the evidence, and hence refuse to accept it and send the jury out for further consideration. The two cases above cited [*Craven* and *Strite Governor Pulley* ] were of this sort. But, in the case at bar, the value to the next of kin of the life wrongfully extinguished by the negligence of defendant is particularly for a jury alone to determine. We think a jury uninfluenced by the trial court's expressed opinion that a certain amount is not compensatory should determine the matter. This necessitates a new trial.

*Id.*

The explanations given by the supreme court in these cases lead me to conclude that the court may receive any verdict that is consistent with the law and the evidence in the case. In the matter before us, there is no claim that the verdict is not consistent with the law and the evidence, and the majority does not conclude that the jury could not have properly reached the verdict that it returned. Instead, the majority concludes that because the jury had access to prejudicial material that potentially tainted the verdict, the trial court could not receive the verdict until a proper inquiry disclosed there was no prejudice.

I do not agree that the trial court could not receive the verdict until a proper inquiry disclosed that the verdict was not tainted. It was not necessary for the trial court to conduct this inquiry to determine whether the verdict was consistent with the law and the evidence in the case.

Minn.Stat. § 631.17 (1998) states:

> When a verdict such as the court may receive is returned, the court administrator shall immediately file it in open court and read it to the jury, and ask the jurors if it is their verdict. If a juror disagrees, that fact shall be entered upon the minutes, and the court shall send the jury out to deliberate further. **If no disagreement is expressed by the jury, the verdict is complete, and the court shall discharge the jury from the case.** The court administrator shall immediately record the verdict in full in the court minutes.

(Emphasis added.)

Upon discovering that a copy of the complaint had been given to the jury, the trial court had reason to be concerned about the possibility that the verdicts were tainted. In spite of this possibility, however, the court read the verdict forms aloud and asked the jurors, "Is this your verdict, so say you one and all?" No juror expressed disagreement, and under the emphasized language in Minn.Stat. § 631.17, the verdicts became complete.

It does not matter whether the court could have chosen a different course when it became concerned about a tainted verdict. The course it followed was to receive the verdict. The United States Supreme Court stated more than 100 years ago that a verdict of acquittal, once received, is a bar to further prosecution. *See Ball v. United States*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). In *Ball*, the Supreme Court stated:

> As to the defendant who had been acquitted by the verdict duly returned and received, the court could take no other action than to order his discharge.

The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense.

*Id.*

When the trial court received the verdict of acquittal on the fifth-degree assault charge, the court could take no other action than to discharge Leroy on that charge. The double jeopardy provision of the United States Constitution bars her retrial on the fifth-degree assault charge. U.S. Const. Amend. V.