**STATE of Minnesota, Respondent,**

v.

**Eric James HUNTER, Appellant.**

**No. A11–1713.**

Court of Appeals of Minnesota.

July 2, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Kevin J. Golden, Assistant County Attorney, Hastings, MN, for respondent.

Peter B. Wold, Aaron J. Morrison, Peter B. Wold, P.A., Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and MUEHLBERG, Judge.*

## OPINION

ROSS, Judge.

Eric Hunter struck a woman in a crosswalk with his vehicle and immediately drove away. The victim suffered serious injuries and died a week later. The state charged Hunter with two felony counts of leaving the scene of an accident involving death and one misdemeanor count of driving after license suspension. A jury heard the evidence but could not reach a verdict after deliberating nearly three days. After discussions in chambers with both attorneys, the district court declared a mistrial *sua sponte.* Hunter unsuccessfully moved to dismiss the charges on double jeopardy grounds. On appeal, he argues that the district court abused its discretion by declaring a mistrial and that it erred by refusing to hold that double jeopardy bars retrial. Because the district court does not abuse its discretion by declaring a mistrial after a defendant, through his

counsel, consents to a mistrial, and because the mistrial was manifestly necessary due to a deadlocked jury, we affirm.

## FACTS

A motor vehicle struck 26–year–old pedestrian Joan LeVasseur in an Apple Valley intersection, where the driver left her bleeding heavily with a fractured pelvis, broken legs, and head trauma. LeVasseur died a week later.

Police investigated and arrested Eric Hunter as the hit-and-run driver. The state charged Hunter with two felony counts of leaving the scene of an accident involving death and one misdemeanor count of driving after license suspension. *See* Minn.Stat. §§ 169.09, subds. 1, 6, 14(a)(1); 171.24 subd. 1(1)-(3) (2008).

The jury began deliberating after a four-day trial. At the end of the first day of deliberations, the jury submitted five questions to the court:

(1) What is the general process of notification for the state of Minnesota when your license is suspended? (2) What is the general process of notification for the state of Minnesota when your license is reinstated? (3) Did the speeding ticket received indicate besides speeding that the police officer knew his license was suspended? (4) Can we receive the stenographer notes of witness testimony from the trial? (5) Can we see statements shown to witnesses to refresh their memory if not entered as exhibits?

The district court answered after conferring with the attorneys, explaining that the jury must make its decision based only on the trial evidence and jury instructions.

The next day, the jury informed the district court that it had come to a stalemate and wanted guidance on how to pro-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ceed. The district court encouraged the jurors to keep trying to come to a verdict. At the end of the second day of deliberations, the jury submitted another question, "Does (prudent men and women, page 1, paragraph 5) apply to us as jurors, the witnesses, or both?" The district court explained that it could not "provide any further clarity than what ha[d] ... previously been provided ... in the instructions," and the court then re-instructed the jury on proof beyond a reasonable doubt.

On the third day of deliberations, a Thursday, the jury submitted one more question and made a request: "Can any consideration be given for someone who needs to leave for a bus trip next Monday through Thursday?" and "We would like to dismiss today at 4:00 p.m. for an anniversary mass today for a death in the family." The district court explained to the jurors that they could not separate during deliberations. It then asked the foreperson if the jury had reached a unanimous decision. The foreperson replied, "No, Your Honor." The district court then decided "on its own motion" that the jury was deadlocked, and it declared a mistrial. As the district court was dismissing the jury, the foreperson stated, "Your Honor, I misled you and I lost it. There was three counts—." The district court interrupted the foreperson, stating that the foreperson answered the specific questions he was asked, and excused the jury.

The district court then explained its decision to declare a mistrial. It reasoned that the issues, "in the court's ... opinion, were not that difficult," and it recounted that the jury had been deliberating for more than two and a half days on three charges, two of which were similar and the third of which was a mere driving violation. It found that there was "no reasonable probability of agreement on the charges" and that further instructing the

jury "would not result in a fair and impartial verdict." The district court stated that it had extensively discussed how to proceed with counsel. They had considered proceeding with fewer than 12 jurors, but the court observed "that was not an option that anyone wanted to pursue." They had also considered the "possibility of a partial verdict," but again, neither side wanted to pursue that option.

The district court scheduled Hunter's retrial for October 2012. In September 2011, Hunter moved the court to dismiss the charges on double jeopardy grounds. The district court denied the motion, holding that Hunter had impliedly consented to the mistrial and also that the mistrial was justified by manifest necessity due to the deadlocked jury. Hunter appeals.

## ISSUE

Did the district court abuse its discretion by denying Hunter's motion to dismiss the charges on retrial following the mistrial?

## ANALYSIS

 Hunter argues that the district court erroneously refused to dismiss the charges after declaring a mistrial *sua sponte* because retrial is barred by his right against double jeopardy. The double jeopardy clauses of the United States and Minnesota Constitutions guarantee that a person may not be tried twice for the same crime. U.S. Const. amend. V; Minn. Const. art. 1, § 7. Hunter has once been subject to jeopardy because jeopardy attaches after a jury is impaneled and sworn. *See State v. McDonald*, 298 Minn. 449, 452, 215 N.W.2d 607, 608–09 (1974). But if a defendant consents to the district court's declaring a mistrial, he waives any claim that retrial is barred under the double jeopardy doctrine. *State v. White*, 369 N.W.2d 301, 304 (Minn.App.1985), *review*

*denied* (Minn. Aug. 20, 1985). If, on the other hand, a defendant objects to the declaration of a mistrial, double jeopardy bars a second trial unless a "manifest necessity" required the first trial to be terminated. *State v. Fuller*, 374 N.W.2d 722, 726 (Minn.1985). We review a district court's *sua sponte* decision to declare a mistrial without the defendant's consent for an abuse of discretion. *State v. Gouleed*, 720 N.W.2d 794, 800 (Minn.2006). But we review factual findings that underlie the decision for clear error. *Fuller*, 374 N.W.2d at 726. Minn. R. Civ. P. 52.01.

▬▬ Hunter argues that the district court erred by finding that he consented to the mistrial. We believe the evidence supports the finding. Hunter never objected to the mistrial. That alone is not consent, but it is a factor the district court could consider. *State v. Olson*, 609 N.W.2d 293, 300 (Minn.App.2000). When defense counsel has adequate opportunity to state a position on a mistrial but fails to assert that the defendant wants to continue with trial, and when the record shows that defense counsel understood that the district court and prosecutor intended a retrial, "the only reasonable conclusion is that defense counsel impliedly consented to the mistrial." *White*, 369 N.W.2d at 304.

At oral argument, Hunter's attorney argued that whether Hunter consented to the mistrial is a legal question, subject to de novo review. But we conclude that it is a factual question, which we review for clear error. Given Hunter's failure to state his position about a mistrial, the district court had to rely on the circumstances to determine whether or not he consented. The district court described its in-chambers discussion with counsel for both parties about a mistrial as "extensive." It noted that Hunter's attorney never objected to the declaration of a mistrial, never tried to dissuade the court from declaring a mistrial, and never proffered or advocated for any other alternative. After the discussion, the district court believed both parties agreed that a mistrial was necessary. Although these discussions took place off the record, we accept the district court's description because Hunter provides no contrary evidence. On this ground, we hold that the district court's finding that Hunter consented to the mistrial is not clearly erroneous.

Hunter also argues that the right to consent or object to a mistrial lies personally with the defendant. But he did not argue this to the district court. We decline to address the argument for the first time on appeal. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996) (holding that even constitutional issues are waived if not raised before the district court).

▬▬ It is also apparent that the district court did not abuse its discretion by determining that the jury was deadlocked. "Reviewing courts give great deference to a trial court's declaration of a mistrial when a jury is deadlocked." *State v. Yeboah*, 691 N.W.2d 87, 91 (Minn.App.2005) (citing *Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978)). The declaration of a mistrial due to a manifest necessity from a deadlocked jury is entitled to substantial deference on appeal. *Arizona*, 434 U.S. at 509–10, 98 S.Ct. at 832; *State v. Soyke*, 585 N.W.2d 418, 420 (Minn.App.1998). Manifest necessity is "an objective necessity, apparent not only to the district court but to any reviewing court." *Yeboah*, 691 N.W.2d at 91.

Hunter argues that the district court could not have been certain that the jury was deadlocked. We are satisfied that the necessity for mistrial was apparent. On the second day of deliberations, the jury expressed that it had come to a stalemate.

The jury deliberated for a third day, but it asked more questions tending to demonstrate that it was not any closer to reaching a verdict than when it announced its stalemate. Specifically, by asking questions about juror scheduling issues arising from personal engagements, at least one of which would not occur until the following week and would affect almost the entire week, the district court's conclusion that the jury was deadlocked is well supported.

 Hunter emphasizes the foreperson's response to the mistrial announcement. He interjected, "Your Honor, I misled you and I lost it. There was three counts—." Our review of the district court's exercise of discretion is limited to the information before the district court at the time of the decision. *Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581, 583 (Minn.1977). The district court therefore appropriately interrupted the foreperson; and any juror statements made after the mistrial decision are irrelevant to whether the decision was appropriate.

The district court had already considered less extreme alternatives than a mistrial. It had spoken with counsel about proceeding with fewer than 12 jurors or accepting a partial verdict, but neither side favored either option. The district court considered giving additional instructions to press the jury forward on more deliberation, but it rejected that approach because it may have been coercive and produced an unfair verdict. The district court's reasoning is sound under the circumstances. The district court's mistrial decision, entitled to great deference, reflects no abuse of discretion.

## DECISION

The district court's finding that Hunter consented to a mistrial is not clearly erroneous. Because Hunter's consent waived any claim that a retrial would violate his right not to be subjected to double jeopardy, and because manifest necessity for a mistrial is apparent due to the deadlocked jury, the district court did not abuse its discretion by denying Hunter's motion to dismiss the charges after the mistrial.

**Affirmed.**