*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1082**

State of Minnesota,
Respondent,

vs.

Russell James Fenstermaker,
Appellant.

**Filed September 2, 2014
Affirmed
Rodenberg, Judge**

Olmsted County District Court
File No. 55-CR-12-101

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Russell James Fenstermaker challenges his convictions of two counts of third-degree criminal sexual conduct. He argues that the district court's erroneous grant of a mistrial over his objection barred his retrial. We affirm.

**FACTS**

Appellant was charged with one count of first-degree criminal sexual conduct, Minn. Stat. § 609.342, subd. 1(h)(iii) (2004), and two counts of third-degree criminal sexual conduct, Minn. Stat. § 609.344, subd. 1(g)(iii) (2006). His trial commenced with a full day of voir dire on Wednesday, November 14, 2012, and a jury of twelve and two alternates was picked and sworn. Because the district judge had other scheduling commitments for Thursday, November 15, opening arguments were scheduled for the morning of Friday, November 16.

The trial did not continue as planned on Friday, November 16, 2012, because the assigned prosecutor was unexpectedly incapacitated by a back injury. The district court was notified on Thursday that the prosecutor "was unable to get out of bed because of a serious back issue." The matter was continued to Monday, November 19 (which was the week of Thanksgiving).

Early in the morning on November 19, another attorney for the state sent an email to the district court, stating: "Unfortunately, [the assigned prosecutor's] condition has not improved sufficiently to allow her to conduct a trial this week. Accordingly, the state will be asking the court to continue the trial currently scheduled to recommence this

morning.  I will appear at 9:00 to request a continuance and answer any questions the court may have."  The state's attorney appeared and explained why the assigned prosecutor was not prepared to try the case:

> First of all, the pain of sitting in a chair like this in the courtroom . . . was such that really she wouldn't be able to concentrate on the proceedings, . . . and to the extent it is bearable, it is only bearable because of pain medication that she's on which affects her thought processes and really would prevent her from litigating a jury trial, especially in a serious case like this.

He explained that no other attorney in the prosecutor's office had time to adequately prepare for trial as substitute counsel, and argued that having a different prosecutor try the case would be unfair, as the assigned prosecutor had established rapport with the witnesses and jurors in the case.  Because it was a criminal-sexual-conduct case, he argued that "the relationship that the prosecutor builds with witnesses, particularly the alleged victim, is very important."  He also argued that there was a manifest necessity justifying a mistrial and suggested, alternatively, that the state was willing to discuss other options, including continuing the trial until "perhaps next week."

Appellant's counsel did not object to a continuance until the following Monday, November 26, but did object to a mistrial.  He stated that appellant was "interested in a speedy resolution, [and] would like to get this matter resolved.  We committed a whole day to select this jury and so did the court."

The district court declared a mistrial, stating:

> First of all, this jury's time of service ends this week, which is Wednesday of this week because of the Thanksgiving holiday.  We did look at my calendar for next week, and I

have matters that need to be attended to next week that are not jury trial related, so it creates some scheduling difficulties. I'm reasonably certain those could be overcome, but it strikes me that a mistrial should be granted, and I guess I would take [the state's] comments as a motion to declare a mistrial. The court was prepared in the absence of such a motion to declare a mistrial sua sponte for a couple of reasons: Number one, those enumerated by the state I think are valid. [The assigned prosecutor] is an experienced trial lawyer. She handles these types of cases. She has established rapport with the alleged victim and the alleged victim's family and also established rapport with the 14 jurors who have been sworn, and I think given the nature of this particular case, and the seriousness of it, that to require the state to have somebody simply jump in at this stage and try the case would not be fair to the State of Minnesota. I would take the same position if something had happened to [defense counsel]. I don't think that either one of those circumstances would be fair, given the nature of these alleged offenses and also the significant punishment that's attendant to any conviction.

I think the high degree standard relative to the manifest necessity is satisfied in this case because [the assigned prosecutor's] back issue arose unexpectedly and suddenly, and she is simply unable to continue, and as I indicated, I think under the circumstances it is virtually impossible for another prosecutor to conduct the trial in this matter, and as I already indicated, I think the impact of a change in the prosecutors would be an unjust burden on the State of Minnesota . . . .

Retrial was scheduled for January 22, 2013.

On January 11, 2013, appellant moved to dismiss, arguing that, because there were reasonable alternatives to a mistrial, the district court erred in concluding that there was a manifest necessity to declare a mistrial and therefore appellant's retrial was barred by the Double Jeopardy Clause. *See* U.S. Const. amend. V; Minn. Const. art. 1, § 7. Appellant's counsel argued that there were two viable alternatives to a mistrial that the

4

district court failed to adequately consider. First, the state could have substituted a different prosecutor to try the case because it was a "straightforward simple case." Second, appellant argues that the district court could have continued the trial one week:

> We didn't know the status of the [assigned] prosecutor's condition, so we didn't quite know when this trial could resume, but . . . I believe the [assigned] prosecutor was back at work the following week. I don't know if she was capable of trying a case at that point, but she was back at work the following week.

The assigned prosecutor, having returned from her back injury, argued that having substitute counsel try the case would have been unfair, as she had rapport with the victim and the jurors. She argued that a continuance would not have been a viable option because the jury's term of service was ending before November 26, when the trial would have resumed. She also argued that, at the time, there was no way of knowing when she could have returned to work, "so the court would have been speculating whether or not I could have gone on the next week."

The district court denied appellant's motion, reiterating its earlier reasoning and adding:

> I didn't undertake my decision [on November 19] lightly. I did take into consideration the arguments that [appellant's attorney] made at the time and restates here today, and given the circumstances and what we knew about [the assigned prosecutor's] condition on November 19, along with all the other circumstances that I stated on the record, it would simply have been patently unfair to have required the state to proceed under those circumstances, and as I indicated on the record, had the situation been reversed, I would have determined that it was equally patently unfair for the defense to have had to continue. And with respect to the hindsight argument [that the assigned prosecutor was back at work on

5

November 26], I didn't have hindsight . . . on November 19, 2012. I had the situation as it existed at the time and think that that was the proper decision at that time, and I still believe it is the proper decision at this time. So I'm going to deny [appellant's] motion to dismiss . . . .

After a two-day trial, the jury acquitted appellant of the first-degree charge and convicted him of two counts of third-degree criminal sexual conduct. Appellant now appeals the district court's denial of his motion to dismiss on double-jeopardy grounds.

## DECISION

Both the United States and Minnesota Constitutions guarantee that a person may not be tried twice for the same crime. U.S. Const. amend. V; Minn. Const. art. 1, § 7. Jeopardy attaches after a jury is impaneled and sworn. *State v. McDonald*, 298 Minn. 449, 452, 215 N.W.2d 607, 608-09 (1974). When a defendant objects to the declaration of a mistrial, double jeopardy bars a second trial unless a "manifest necessity" required that the first trial be terminated. *State v. Fuller*, 374 N.W.2d 722, 726 (Minn. 1985). We review a district court's decision to declare a mistrial without the defendant's consent for an abuse of discretion. *State v. Gouleed*, 720 N.W.2d 794, 800 (Minn. 2006).

The manifest-necessity standard was set forth in caselaw nearly 200 years ago:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances . . . .

6

*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). "The words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden. . . . [But] it is manifest that the key word 'necessity' cannot be interpreted literally; instead . . . we assume that there are degrees of necessity and we require a 'high degree' before concluding that the mistrial is appropriate." *Arizona v. Washington*, 434 U.S. 497, 505-06, 98 S. Ct. 824, 830-31 (1978).

Determining whether a manifest necessity exists to declare a mistrial requires application of a balancing test. On the one hand, a district court must consider the defendant's important interest in having the trial completed in a single proceeding, preserving the possibility of the defendant obtaining an acquittal before that "particular tribunal." *United States v. Jorn*, 400 U.S. 470, 484, 91 S. Ct. 547, 556-57 (1971) (plurality opinion). But "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 688-89, 69 S. Ct. 834, 837 (1949). The manifest-necessity standard "is a flexible one that seeks to achieve fairness for the prosecution, the defendant, and the public interest." *Gouleed*, 720 N.W.2d at 800.

A second prosecution "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." *Washington*, 434 U.S. at 503-04, 98 S. Ct. at 829. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. *Id.* at

7

503-04, 98 S. Ct. at 829-30. The defendant need not demonstrate "additional prejudice" to obtain relief from double jeopardy, because the defendant's interest in the right is "a weighty one." *Illinois v. Somerville*, 410 U.S. 458, 471, 93 S. Ct. 1066, 1073-74 (1973).

The district court is in the best position to determine whether a manifest necessity exists, and its determination is to be given deference. *See Washington*, 434 U.S. at 508-09, 98 S. Ct. at 832.

> The interest in orderly, impartial procedure would be impaired if [a trial court] were deterred from exercising [the] power [to declare a mistrial] by a concern that any time a reviewing court disagreed with [its] assessment of the trial situation a retrial would automatically be barred. The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper performance of his duty . . . .

*Id.* at 513, 98 S. Ct. at 834 (quotation omitted). The manifest-necessity standard is generally not met when "bad-faith conduct by [a] judge or prosecutor threatens the harassment of an accused by successive prosecutions or declaration of mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant." *Id.* at 508, 98 S. Ct. at 831-32.

> At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial. . . . [Allowing retrial in this situation] accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

*Id.* at 509, 98 S. Ct. at 832.

Although caselaw has not established "clear-cut guidelines as to what constitutes manifest necessity," one consideration on review is "whether the court adequately

8

assessed less drastic alternatives." *State v. Long*, 562 N.W.2d 292, 296 (Minn. 1997). Another is whether the district court gave "careful consideration to the defendant's interest in having the trial concluded in a single proceeding." *Id.* (quotation omitted).

No Minnesota case has addressed the question of declaring a mistrial in the precise circumstances presented here. Appellant acknowledges *State v. Anderson*, 988 A.2d 276, 286 (Conn. 2010), and its holding that "[t]he general consensus that emerges from these [types of] cases is that a court properly exercises its discretion in declaring a mistrial when a prosecutor becomes seriously ill during trial such that he requires a lengthy absence, and no other prosecutor is able to step in to resume the trial within a reasonable period." Appellant nevertheless argues that there were two alternatives to a mistrial here. First, a substitute prosecutor could have tried the case. Second, the district court could have ordered a week-long continuance as the prosecutor returned to work the following Monday, November 26.[1]

Concerning the first alternative, the record establishes that the district court fully considered whether a substitute prosecutor could have tried the case. The district court deemed this option unreasonable. The assigned prosecutor had rapport with the victim, which the state persuasively argues is important in a criminal-sexual-conduct case.

---

[1] The state argues in its brief that the district court could have waited until Friday, November 16 to swear the jury, and if it had done so, jeopardy would not have attached before the prosecutor became incapacitated. But caselaw unquestionably establishes that jeopardy attaches once the jury is sworn. *See McDonald*, 298 Minn. at 452, 215 N.W.2d at 608-09. It may be prudent for a district court to refrain from swearing a jury when trial is not set to commence immediately after jury selection, but this argument by the state, contemplating that appellant would not have a double-jeopardy argument had the facts been different, is entitled to and receives no consideration in this appeal and on these facts.

Having observed the case firsthand, the district court found that the prosecutor had rapport with the jurors, and noted that she is an experienced trial lawyer responsible for prosecuting cases of this sort. The district court also noted that, if the roles had been reversed and defense counsel had fallen ill, it would have been unfair to expect substitute counsel to represent appellant. Appellant argued at the January 18, 2013 hearing that this was not a very complicated case, because there were few witnesses, the victim was an adult (and not a child), and there was no forensic evidence. But the district court was in the best position to determine whether it would have been fair to the state to require a substitute attorney to try the case, and we defer to its determination. *See Washington*, 434 U.S. at 508-09, 98 S. Ct. at 832; *Gouleed*, 720 N.W.2d at 800. The district court did not abuse its discretion in concluding that this alternative would have been unreasonable under the circumstances.

Appellant next argues that the district court could have continued the trial for one week rather than declare a mistrial, and observes that the assigned prosecutor returned to work on Monday, November 26. The state argues that, at the time the district court declared a mistrial, the prosecutor had been incapacitated for five days and there was "no way of knowing when trial could resume." Appellant clarifies in his reply brief that he is not arguing that "the return of the injured prosecutor on Monday, November 26 proves error. What the prosecutor's return to work shows is the reasonableness and practical nature of [appellant's] request for a short continuance."

The district court correctly noted in its January 18, 2013 ruling that it did not have the benefit of hindsight when it declared the mistrial. At the time, the district court had

no information concerning when the assigned prosecutor would be able to resume trying this or any other case. Again, the district court was in the best position to assess the alternatives to a mistrial. *See Washington*, 434 U.S. at 508-09, 98 S. Ct. at 832. Because the district court did not know when the assigned prosecutor would be able to resume trial, and was familiar with these attorneys and their areas of responsibility, it did not abuse its discretion in determining that an additional continuance was not a reasonable option given the circumstances.

Appellant also argues that the district court improperly relied on the fact that the jury's term of service was scheduled to end the Wednesday before Thanksgiving. He argues that the district court never questioned the jurors about their availability for the following week despite their presence in the courtroom, and that this case did not involve sequestration or intense media coverage, so the jurors' lives could have continued as normal if the trial was continued for a week. We agree that scheduling issues seldom provide a compelling reason to declare a mistrial. *See State v. Olson*, 609 N.W.2d 293, 304 (Minn. App. 2000) ("A district court's concern over trial calendar management does not necessarily constitute manifest necessity allowing a defendant to be tried twice."). But the district court did not rely solely or primarily on scheduling problems or the length of the jury's service in arriving at its decision. After indicating that there may be scheduling issues, the district court stated that it was "reasonably certain [the scheduling conflicts] could be overcome." The record indicates that the district court relied primarily on other—and proper—considerations in declaring a mistrial.

11

A criminal defendant's "valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Washington*, 434 U.S. at 505, 98 S. Ct. at 830. This is a close case. The district court did not abuse its discretion in declaring a mistrial due to a manifest necessity over appellant's objection, where the assigned prosecutor suffered an unanticipated and disabling back injury after the jury had been sworn and where the district court saw no reasonable alternative after careful consideration of the overall facts and circumstances.

**Affirmed.**